PRESENT: All the Justices

CITY OF RICHMOND

OPINION BY
v.  Record No. 110820       CHIEF JUSTICE CYNTHIA D. KINSER
June 7, 2012
JACKSON WARD PARTNERS, L.P.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

The City of Richmond (the City) appeals from a judgment of

the circuit court correcting erroneous tax assessments on real

property owned by Jackson Ward Partners, L.P. (JWP).  Because we

conclude that JWP failed to carry its burden to prove the fair

market value of the eight parcels of real property at issue, we

will reverse the judgment of the circuit court.

FACTS AND PROCEEDINGS

JWP owns real property, designated as Jackson Ward

Apartments (the Properties), in the Jackson Ward area of the

City of Richmond, which it operates as an affordable housing

development.[1]  The Properties are considered a "scattered site

community" and consist of 11 structures with 18 residential

rental units situated on eight, non-contiguous tax parcels

located on three different streets, West Clay, West Marshall,

and North 1st Streets.  The Properties consist of various types

of dwellings: three parcels contain a single duplex, i.e., one

_____

[1] The Properties were originally purchased by Jackson Ward
Associates, an affiliated company, and subsequently assigned to
Jackson Ward Partners, L.P.  In this opinion, these companies
will be referred to collectively as JWP.

structure with two units, four parcels contain single-family homes, and one parcel contains four attached duplexes with a total of eight units.  The parcels are zoned R-6, single family or duplex,[2] and contain both two-bedroom and three-bedroom units.

In purchasing the eight parcels, JWP agreed to renovate the structures and operate the Properties as affordable rental housing.  The required renovations were financed through Virginia Housing & Development Authority (VHDA) loans, the terms of which were pre-negotiated by the Richmond Redevelopment & Housing Authority (RRHA) and United States Department of Housing and Urban Development (HUD) through the Properties' participation in HUD's Section 8 affordable housing program.

The eight, non-contiguous tax parcels are subject to a deed of trust and a regulatory agreement with VHDA.  Under that agreement, the parcels are required to be operated as an 18-unit, affordable, multifamily rental housing development for a 40-year period.[3]  The VHDA treats the Properties as comparable to an 18-unit apartment complex.  The regulatory agreement prohibits the sale of individual structures or parcels and requires that the units be rented to persons whose income is 40%

---

[2] See Richmond City Code § 114-412.1.

[3] In addition, a regulatory agreement restricting the property for a 30-year period was required for participation in the low income housing tax credit program.  VHDA administers the low income housing tax credit.

2

or less than the area median income.[4]  Pursuant to the various agreements, HUD dictates the rental rates on the Properties and conducts periodic inspections to ensure compliance with certain regulatory requirements.

Pursuant to Code § 58.1-3984, JWP filed a second amended complaint in the circuit court for correction of erroneous tax assessments on the Properties for the tax years 2005-2008.  In its complaint, JWP claimed the assessments were "clearly erroneous and in excess of fair market value in violation of the Constitution of Virginia, Article X, § 2," and "lacked uniformity . . . with respect to the same class of subjects within the City in violation of the Constitution of Virginia, Article X, § 1."

At a five-day bench trial, Eugene Joseph, a licensed commercial real estate appraiser, testified for JWP regarding his appraisal of the Properties for the tax years in question. Joseph stated that the "cornerstone of any appraisal" is determining the highest and best use.  He explained the "four general areas of the highest and best use": what is "legally permissible, . . . physically possible, financially feasible, and . . . maximally productive."  Because the eight parcels were "restricted by an extended use regulatory agreement" and could

_____

[4] By receiving the low income housing tax credit, JWP must rent the units to individuals whose income is 50% or less than the area median income.

3

not "be sold off as a single family [home] or duplex," Joseph opined that the only legally permissible use, and thus the highest and best use, was a multifamily, 18-unit parcel. According to Joseph, he had "to value the property as what it truly is and that is a scattered site single, multifamily property per what's legally permissible."

To determine fair market value, Joseph considered the cost, sales comparison, and income approaches to valuing the Properties. Joseph deemed the income approach to be the primary indicator of value but used the sales comparison approach for "some additional support." According to Joseph, the income approach is more reliable because "typical buyers and investors consider the income potential of a property." In applying the income approach, Joseph considered the contract rents set by HUD, the typical vacancy and collection losses, typical operating costs for such a property, and the historical operating expenses of the Properties to arrive at the net operating income. Joseph then determined a capitalization rate, primarily by "extract[ing] capitalization rates from . . . other sales," and capitalized the net operating income to arrive at his value estimate.[5] Under the sales comparison approach, Joseph

---

[5] Because the real estate taxes were in dispute, Joseph excluded them from the operating expenses in determining net operating income and compensated for the real estate taxes by adjusting the capitalization rate.

compared the sale of similar properties, which in this case meant multifamily apartment complexes. Joseph then made "lump sum adjustment[s] to account for" the rent restrictions, again because "the property is encumbered and you have to account for that."

Using these methods, Joseph determined that the fair market value of the Properties as a whole was $600,000 for each of the tax years 2005-2008. Joseph opined that "the overall value of $600,000 should be allocated on a per unit basis to reflect the individual tax parcels as identified by the City." According to Joseph, "you can simply allocate on a per unit basis to the various parcels and to the various units." By allocating the $600,000 value equally on a per unit basis to the 18 units, Joseph determined the fair market value of each unit to be $33,333. Joseph then determined the fair market value of each tax parcel based on the number of units located on the parcel.

On cross-examination, Joseph conceded that the parcels could be assessed individually, though only as a "fractional appraisal" because the highest and best use of the Properties was as one multifamily housing development. According to Joseph, "you have to value the property as one" because of the restrictions contained in the regulatory agreement. He further admitted that his appraisal was not a fee simple valuation for the same reason. When asked if his allocation method "was

5

simply a mathematical calculation," Joseph indicated that it was and opined that the method was "a valid technique."

Several witnesses who testified for JWP stated that the Properties operate at a loss due, in large part, to the City's tax assessments. According to those witnesses, the Properties could neither generate sufficient income to justify the assessed value nor be sold at the assessed value.

Richard Woodson, the Deputy Assessor for the City and also a licensed real estate appraiser, testified regarding the City's assessment of the Properties for tax years 2005-2008. In contrast to Joseph, Woodson stated that the "true test of highest and best use" is "[w]hat use produces the highest value." Woodson explained that in the Jackson Ward area of the City, the trend is for "rooming houses" to be converted back to single family dwellings. That factor, along with the applicable zoning and the type of construction on each parcel led Woodson to conclude that the highest and best use of the Properties is as single-family homes and duplexes. Woodson did not consider the Properties to be a scattered site apartment complex because he was required to assess the "fee simple interest [de]void of any encumbrances." Woodson stated the City's assessment method was not restricted by the deed of trust or the regulatory agreement's treatment of the Properties as a multifamily housing development and, with one exception, he did not consider the

6

restrictions imposed by the regulatory agreement in arriving at the assessed value of the eight parcels.[6] Doing so, he opined, would mean assessing a leasehold interest rather than a fee simple interest.

Woodson believed the City was required to assess each parcel individually: "Each parcel gets a separate tax bill, so it has to have a separate assessment." He pointed out that the RRHA has numerous single-family dwellings scattered throughout the City that have similar rent restrictions. Nevertheless, the City assesses each parcel individually under a fee simple valuation. Woodson opined that other than the fact that the parcels are owned by one entity and are rented as a package, they do not resemble an apartment complex.

To determine the fair market value of each of the eight tax parcels, Woodson considered the income, cost, and sales comparison approaches. Unlike Joseph, Woodson utilized the sales comparison approach because it provided "[t]he most

---

[6] As of the 2007 tax year, to determine fair market value, a taxing authority had to consider restrictions on rent and alienation of title, and the actual operating expenses for real property "containing more than four residential units operated in whole or in part as affordable rental housing." Former Code § 58.1-3295 (as in effect prior to amendments by 2009 Acts ch. 264, 2010 Acts chs. 552, 791, 824, and 2011 Acts ch. 137). Woodson applied that statute only to the parcel on Clay Street, with four attached duplexes, for tax years 2007 and 2008. Under the statute, Woodson accounted for the "below market rents and higher than normal expenses" by applying a "lower gross rent multiplier."

readily identifiable and trackable information for single family and duplex houses" that was "readily available" to the City. To apply the sales comparison approach, Woodson used properties "most similar in size, location, condition, quality, land sizes, et cetera." As Woodson noted, the structures on the parcels have unique "individual characteristics" with respect to setbacks, entries, porches, and square footage. The City assessed the eight tax parcels at the following fair market values for the years in question:

| Address | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| 509 N. 1st St. | $150,000 | $150,500 | $162,000 | $186,000 |
| 511 N. 1st St. | $150,000 | $133,000 | $155,000 | $171,000 |
| 517 N. 1st St. | $185,000 | $185,000 | $190,000 | $200,000 |
| 519 N. 1st St. | $169,000 | $153,000 | $163,000 | $174,000 |
| 521 N. 1st St. | $155,000 | $182,000 | $215,000 | $220,000 |
| 315-321 W. Clay St. | $565,000 | $725,000 | $605,000 | $605,000 |
| 409 W. Marshall St. | $165,000 | $185,000 | $225,000 | $225,000 |
| 411 W. Marshall St. | $155,000 | $194,000 | $215,000 | $235,000 |
| **TOTAL VALUES** | $1,694,000 | $1,907,500 | $1,930,000 | $2,016,000 |

Woodson criticized Joseph's assessment as not valuing the fee simple interest but instead the leased fee, an "entirely different subject[]." In addition, Woodson believed the properties used by Joseph as comparable properties were completely different types of property. Joseph, Woodson stated, should have assessed each parcel individually and his assessment was "nothing more than an appraisal for investment value in a leasehold context."

8

Following the close of evidence, JWP asked the circuit court to correct the City's assessments on the eight tax parcels. According to JWP, the City, in assessing the Properties, ignored their highest and best use as an 18-unit, multifamily housing development. Because the regulatory restrictions required that the Properties be operated as an affordable housing development, JWP argued, the City committed manifest error by basing its assessment on a false premise: that the units were single-family homes and duplexes. While JWP conceded that the Properties consisted of distinct tax parcels and that "the law require[d] that all property be taxed," it argued there was no requirement for an "individual appraisal on each parcel."

Responding, the City argued that it was not a party to the restrictions placed on the Properties and the restrictions, therefore, could not alter its assessment obligations. The City argued that "the biggest flaw" in JWP's appraisal was the determination of highest and best use, which ignored the Properties' R-6 zoning and the fact that there are eight, non-contiguous tax parcels. The City also claimed that by appraising all the parcels as a whole and then allocating that value to each of the individual parcels with a "mathematical calculation," JWP ignored this Court's holding in West Creek Associates, LLC v. County of Goochland, 276 Va. 393, 665 S.E.2d

9

834 (2008), that each parcel must be assessed individually. In addition, the City noted that JWP's appraisal failed to account for differences in size, location, age, and features of the individual structures, as well as the fact that some units had recently been renovated.

The circuit court held that JWP satisfied its burden of proving the City's assessments for years 2005-2008 were erroneous and ordered the City to correct its assessments and issue refunds to JWP for taxes it overpaid based on the erroneous assessment, plus interest. The circuit court agreed with JWP that consideration of the Properties' highest and best use compelled consideration of the applicable regulatory restrictions. Invoking the definition of fair market value as "[w]hat a willing buyer while under no compulsion to buy" will pay, the court held that the "deed restrictions have to come into play." Because the City's assessments failed to consider the restrictions on the Properties, the court concluded that JWP had carried its burden to show by a clear preponderance of the evidence that the City committed manifest error in its assessments of the eight tax parcels. The City, according to the court, did not "take into account the reality of the situation."

The circuit court stated:

10

[Valuing the property as an apartment complex is] the best way to approach it given the deed restrictions and the regulatory agreement. It has to be.  It just defies reality . . . that any purchaser approaching a seller of these properties wouldn't have to take these things into account, and the fee simple analysis is just not appropriate.

In addition, the court opined that "the income approach as urged by [JWP] is the correct and more readily available vehicle for determining . . . the fair market value."  The circuit court thus concluded that the City's tax assessments should be "adjusted according to [JWP's] evidence and the refunds allowed."

The circuit court denied the City's motion to reconsider, and this appeal followed.

ANALYSIS

We granted the City an appeal on the following assignments of error:

1.   The Circuit Court of the City of Richmond erred in ruling that eight non-contiguous tax parcels should be valued as one apartment complex.

2.   The Circuit Court of the City of Richmond erred by accepting Plaintiff's values, which were determined in bulk.

3.   The Circuit Court of the City of Richmond erred by ruling that the City's values had to be determined under the income approach to valuation at less than fee simple interest.

4.   The Circuit Court of the City of Richmond erred by determining that Plaintiff overcame

11

the presumption of correctness under Virginia Code § 58.1-3984.

With regard to these issues, the parties make essentially the same arguments on appeal as they did before the circuit court. If the City is correct on any one of the issues raised in the assignments of error, the circuit court's judgment must be reversed.

The question presented by the first two assignments of error is dispositive of the appeal, i.e., whether the circuit court erred as a matter of law by holding, based on JWP's appraisal of the Properties, that eight separate, non-contiguous parcels of real property can be appraised as one parcel and that the appraised value could then be allocated among the individual parcels based solely on the number of rental units situated on each parcel. This question is a mixed question of law and fact, and we thus conduct a de novo review. See Ford Motor Credit Co. v. Chesterfield Cnty., 281 Va. 321, 334, 707 S.E.2d 311, 317 (2011).

The Constitution of Virginia, with certain exceptions not relevant here, requires that all property be taxed, and that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Va. Const. art. X, § 1. In addition, all assessments of real property "shall be at their fair market value." Va. Const. art.

X, § 2. A taxing authority's assessment is presumed to be correct, and a taxing authority need not "prov[e] the correctness of its assessment." TB Venture, LLC v. Arlington Cnty., 280 Va. 558, 563, 701 S.E.2d 791, 794 (2010). The lack of such evidence " 'does not impeach [the correctness of an assessment] since the taxpayer has the burden of proving the assessment erroneous.' " Id. (quoting West Creek, 276 Va. at 409, 665 S.E.2d at 843).

A taxpayer challenging an assessment must show, "by a clear preponderance of the evidence," that the taxing authority "totally disregarded controlling evidence in making the assessment" or "committed manifest error." TB Venture, 280 Va. at 563, 701 S.E.2d at 794 (internal quotation marks omitted). To establish manifest error in the assessment, the taxpayer must prove

> that the taxing authority employed an improper methodology in arriving at a property's assessed value or by establishing "a significant disparity between fair market value and assessed value . . . so long as the assessment [does not come] within the range of a reasonable difference of opinion, . . . when considered in light of the presumption in its favor."

Id. (quoting West Creek, 276 Va. at 414, 665 S.E.2d at 845) (alterations in original) (internal quotation marks omitted).

Regardless of the manner in which a taxpayer attempts to establish manifest error,

13

to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, <u>a taxpayer must necessarily establish the property's fair market value.</u> This is so irrespective of whether a taxpayer is attempting to show manifest error or disregard of controlling evidence by proving a significant disparity between fair market value and assessed value, or by establishing a flawed methodology by the taxing authority in setting the assessed value.

<u>West Creek</u>, 276 Va. at 417, 665 S.E.2d at 847 (citation omitted) (emphasis added).

"[F]air market value 'is the <u>present actual value of the land</u> with all its adaptations to general and special uses, and not its prospective, speculative or possible value, based on future expenditures and improvements.'" <u>Id.</u> at 416, 665 S.E.2d at 846 (quoting <u>Fruit Growers Express Co. v. City of Alexandria</u>, 216 Va. 602, 609, 221 S.E.2d 157, 162 (1976)); <u>see</u> <u>also</u> <u>Keswick Club, L.P. v. County of Albemarle</u>, 273 Va. 128, 136, 639 S.E.2d 243, 247 (2007) (fair market value of real property is the "sale price when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it") (internal quotation marks omitted).

There are many factors to be considered in arriving at the fair market value of property. While size and cost of the property may be factors to be given weight, there are many other factors which tend to increase or diminish such value; for instance, the design, style, location, appearance, availability of use, and the economic situation prevailing in its area, as well as other circumstances.

14

Smith v. City of Covington, 205 Va. 104, 108-09, 135 S.E.2d 220, 223 (1964).

In West Creek, 144 separate limited liability companies (collectively, West Creek) challenged the tax assessments of 144 parcels of real property comprising a total of 2,500 acres, a portion of which had been deeded to each company. 276 Va. at 397-98, 665 S.E.2d at 836. Citing the lack of metes and bounds descriptions of the parcels, an approved subdivision, and infrastructure on many of the parcels, West Creek's expert real estate appraiser valued the parcels "as a whole" and then "assigned a per acre value . . . based on the availability of infrastructure." Id. at 401, 665 S.E.2d at 838. On appeal, one of the issues was whether the trial court erred in concluding that the taxpayer had failed to establish the fair market value of certain parcels of real estate because the taxpayer "had done nothing more than spread the value of the development across the individual parcels." Id. at 414, 665 S.E.2d at 845 (internal quotation marks omitted).

This Court affirmed the trial court's judgment "that West Creek failed to present credible evidence of the parcels' fair market values." Id. at 416-17, 665 S.E.2d at 847. We held that "[i]n order to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value,

15

see Code § 58.1-3984(A), a taxpayer must necessarily establish the property's fair market value." Id. at 417, 665 S.E.2d at 847. Citing Code § 58.1-3290, we pointed out that even West Creek agreed the County was required to assess the 144 parcels individually. Id. at 414, 665 S.E.2d at 846.

> In relevant part, Code § 58.1-3290 provides that, "[w]hen a tract or lot becomes the property of different owners in two or more parcels, subsequent to any general reassessment of real estate in the city or county in which such tract or lot is situated each of the two or more parcels shall be assessed and shown separately upon the land books, as required by law." Although the assessments at issue in this appeal were part of the County's quadrennial reassessment, other statutes also require the parcels to be assessed individually. See, e.g., Code § 58.1-3281 (commissioner of revenue shall annually, on January 1, "ascertain all the real estate in his county or city, . . . and the person to whom the same is chargeable with taxes on that day"); Code § 58.1-3303 (requiring clerk of each circuit court to provide commissioner of revenue with deed recordation receipt showing, among other things, description of real property conveyed and names of grantor and grantee); Code § 58.1-3309 (requiring information appearing in receipts provided pursuant to Code § 58.1-3303 to be transferred "on the land book and charged to the person to whom the transfer is made").

Id. at 414 n.8, 665 S.E.2d at 846 n.8 (emphasis added).

In response to West Creek's argument that the trial court had failed "to consider the recent purchase price for the amassed parcels as evidence of [their] fair market value," we held that West Creek was required to establish the fair market value of each parcel, regardless of any error on the part of the

16

taxing authority.  Id. at 415-17, 665 S.E.2d at 846-47. Continuing, we explained that West Creek's expert appraiser had "accepted the sale price of the 2,500 acres as controlling and assigned portions of the price as the per acre value for parcels depending on the developmental phase in which the parcels were located."  Id. at 417, 665 S.E.2d at 847.  We noted that the appraiser's methodology was "'an arithmetic formula,' which is not an accepted appraisal method."  Id.  Thus, we concluded that "West Creek's evidence did not rebut the presumption of correctness afforded the assessments."  Id. at 417-18, 665 S.E.2d at 847.

This Court's decision in TB Venture is even more compelling.  There, TB Venture, LLC (TB Venture) alone owned a condominium development containing 21 units that were subject to an agreement requiring the units "to be rented to qualifying, low-income households for a period of 40 years and specif[ying] limitations on rental amounts and occupancy."  280 Va. at 560-61, 701 S.E.2d at 792.  TB Venture challenged the taxing authority's tax assessments on the condominium units and at trial presented testimony from an expert qualified in real estate appraisal.  Id. at 561, 701 S.E.2d at 793.  Valuing the units on a "'leased fee' rather than a fee simple basis" to account for the 40-year rental restrictions encumbering the units, the expert admitted that he appraised " 'all 21 units as

17

a whole' " and "then allocated a value to each unit 'based on the pro rata share of the income of each of the units derived by the overall income.' " Id. at 561-62, 701 S.E.2d at 793. Like JWP's appraiser, Joseph, TB Venture's expert appraiser testified that "he did not determine the fair market value of each unit because 'the units [could not] be sold individually as condominiums' but are 'basically tied together through this covenant.' " Id. at 562, 701 S.E.2d at 793 (alteration in original).

The trial court sustained the taxing authority's motion to strike TB Venture's evidence. Id. at 562, 701 S.E.2d at 793. In part, the court concluded that TB Venture had " 'failed to prove the value of the subject properties.' " Id. On appeal, we affirmed the trial court's judgment. Id. at 565, 701 S.E.2d at 795. Noting that "the taxpayer's burden to prove that real property is assessed at more than its fair market value necessarily requires that the taxpayer establish the property's fair market value," we held that TB Venture did not carry its "burden to establish each unit's fair market value." Id. at 564-65, 701 S.E.2d at 794-95.

We explained that "just as the [taxing authority] was required to separately assess each unit, TB Venture was required to establish the fair market value of each unit." Id. at 564, 701 S.E.2d 795. According to Code § 55-79.42, "each condominium

18

unit constitutes for all purposes a separate parcel of real estate" and, "[i]f there is any unit owner other than the declarant, each unit, together with its common element interest . . . shall be separately assessed and taxed."[7] See also West Creek, 276 Va. at 414 n.8, 665 S.E.2d at 846 n.8 (listing statutes that require parcels of real property to be assessed individually).

Addressing TB Venture's argument that "each unit's location in the complex, its amenities, and even its view [were] irrelevant because of the restrictions" applicable to all the units, the Court stated:

> To the extent there are market-driven impediments to selling the units individually and limitations on the rental income that can be realized, such factors may affect each unit's fair market value. But, they do not alter the statutory requirement that condominiums be treated as separate parcels of real estate and separately assessed. Nor do such factors alter TB Venture's burden to establish each unit's fair market value in order to show that its real property is assessed at more than fair market value.

Id. at 565, 701 S.E.2d at 795 (citations omitted) (emphasis added).

The statutes at issue in TB Venture and West Creek requiring individual assessments of the real properties at issue in those cases are not unique in the realm of real property

---

[7] TB Venture was not the "declarant." Id. at 564, 701 S.E.2d at 794.

19

assessments by taxing authorities.  Instead, both statutes, Code §§ 55-79.42 and 58.1-3290, respectively, merely apply to unique circumstances the general rule that each tax parcel must be assessed individually.  Regarding Code § 55-79.42, at issue in TB Venture, it is essential to note that "condominiums are creatures of statute wholly unknown at common law."  Orchard Glen East, Inc. v. Board of Supervisors, 254 Va. 307, 311, 492 S.E.2d 150, 153 (1997).  Thus, being a creature of statute, the General Assembly had to direct the treatment of condominium units for purposes of assessment by taxing authorities.  It did so by requiring taxing authorities to assess each condominium unit as a separate tax parcel, like all other parcels of real property.

The same can be said of time-shares and cooperatives. Because both are creatures of statute, Code § 55-363 directs how to treat time-share estates for purposes of tax assessment, and Code § 55-428 does the same for cooperative interests. Specifically, Code § 55-363(B) states that "[e]ach time-share estate constitutes for purposes of title a separate estate or interest in a unit," and subsection C requires that each time-share unit be taxed as if it were owned by a single taxpayer. Code § 55-363(C).  Similarly, Code § 55-428(A) states that a cooperative interest "is real estate for all purposes" and subsection C commands that in certain instances, "[t]he fair

market value of each such cooperative apartment unit shall be established by determining its fair market value for sale as an individual unit, determined in the same manner . . . as the fair market value of condominium units."

The statute at issue in West Creek states that

> [w]hen a tract or lot becomes the property of different owners in two or more parcels, subsequent to any general reassessment of real estate in the city or county in which such tract or lot is situated each of the two or more parcels shall be assessed and shown separately upon the land books, as required by law.

Code § 58.1-3290.  Similarly, Code § 58.1-3285 provides:

> Whenever a tract of land is subdivided into lots under the provisions of law and plats thereof are recorded, subsequent to any general reassessment of real estate in the city or county in which such real estate is situated, each lot in such subdivision shall be assessed and shown separately upon the land books, as required by law.

Rather than imposing a unique requirement for the assessment of a tract of real property that has been subdivided or has become the "property of different owners in two or more parcels," these statutes simply require that such real property be assessed like all other tracts of real property, as individual parcels.

As we noted in West Creek, numerous statutes require that separate parcels of real property be assessed on an individual basis.  Code § 58.1-3281 requires the commissioner of the revenue to annually "ascertain all the real estate in his county

21

or city, . . . and the person to whom the same is chargeable with taxes."  In addition, the commissioner "shall assess the value of any building and enclosure not previously assessed" and the "value shall be added to the value at which the land was previously charged."  Id.  Under Code § 58.1-3302, the commissioner of the revenue is required to "enter separately" in the table of town or city lots "each lot and [to] set forth . . . the value of the buildings on the lot [and] the value of the lot including buildings."  Code § 58.1-3303 requires the clerk of each circuit court to provide the commissioner of the revenue with a deed recordation receipt for "all deeds for the partition and conveyance of land" that states, among other things, a description of the real property conveyed and the names of the grantor and grantee.  Furthermore, the Attorney General expressed the opinion that certain statutes, Code §§ 58-772, -772.1, -773 and -805 (now Code §§ 58.1-3285, -3290, -3302), "provide a general legislative mandate that separate parcels of real property shall be separately assessed."  1974-1975 Op. Atty. Gen. 89.

Despite opining that the highest and best use of the eight tax parcels is a single apartment complex, Joseph, as JWP's appraiser, nonetheless recognized that he had to establish the fair market value of each parcel when he allocated a numerical value to each of the eight parcels.  But, the methodology used

22

by Joseph to value each tax parcel, which was in turn sanctioned by the circuit court, is the same methodology this Court rejected in TB Venture. Joseph opined that the fair market value of the eight parcels was $600,000 for each of the tax years in question. When asked how that value translated to the eight tax parcels, he responded that "you can simply allocate on a per unit basis to the various parcels and to the various units." During cross-examination, Joseph admitted that he took the $600,000 value and performed a "mathematical calculation" to arrive at the fair market value of each parcel. He also admitted that he appraised the eight parcels as a single apartment complex only because of the applicable restrictions contained in the regulatory agreement.

Admittedly, TB Venture involved condominium units, not parcels of real property. But, as we have already explained, Code § 55-79.42 requires each condominium unit to be assessed as a separate parcel of real estate, just like all other individual parcels of real property. TB Venture's expert appraiser, like Joseph, valued numerous condominium units in bulk and placed a single value on all the units. He then assigned a fair market value to each unit by performing a mathematical calculation. TB Venture, 280 Va. at 561-62, 701 S.E.2d at 793. We affirmed the trial court's judgment granting the taxing authority's motion to strike TB Venture's evidence on the basis that, as a matter of

23

law, TB Venture failed to carry its burden of establishing the fair market value of each unit.[8]  TB Venture, 280 Va. at 564-65, 701 S.E.2d at 794-95.  Interestingly, the same methodology was also employed and rejected in West Creek, 276 Va. at 401-02, 417-18, 665 S.E.2d at 838-39, 847-48.  In other words, TB Venture and West Creek are dispositive of the case before the Court.

As we explained in City of Covington, fair market value includes considerations of a parcel's unique characteristics such as "size and cost[,] design, style, location, [and] appearance."  City of Covington, 205 Va. at 108-09, 135 S.E.2d at 223.  A value that has been mathematically assigned to individual tax parcels from a bulk appraisal of multiple parcels considers none of these factors.  As the City correctly argued to the circuit court, JWP's appraisal failed to account for differences in the eight parcels with respect to size, location, style, unique features like porches, and the fact that certain units had received recent renovations.  According to Woodson, one of the parcels has "the original [wrought] iron porch columns and filigree."  Thus, like TB Venture, JWP failed as a matter of law to carry its burden to establish the fair market

---

[8] If TB Venture's methodology of valuing the condominium units had been an issue for the fact-finder, it would have been error for the trial court to strike TB Venture's evidence.

24

value of the eight tax parcels.  See West Creek, 276 Va. at 417, 665 S.E.2d at 847.

The circuit court's decision implies that a taxpayer's burden of proving the fair market value of each tax parcel is somehow vitiated by the requirement to assess real property according to its highest and best use.  See Shoosmith Bros., Inc. v. County of Chesterfield, 268 Va. 241, 246, 601 S.E.2d 641, 644 (2004) ("[I]n assessing all tangible properties for tax purposes such properties should be assessed at their highest and best use.") (internal quotation marks omitted).  Because the Properties are subject to certain regulatory restrictions, the circuit court held, the highest and best use is a single apartment complex.  But, the principle that real property be assessed at its highest and best use does not mean real property should be assessed as something other than what it actually is. In this case, there is no dispute that the real property at issue is eight separate, non-contiguous parcels.  Appraising the Properties according to their highest and best use does not justify treating the Properties as if they were not eight individual parcels.

Our decision in TB Venture makes clear that assessing according to a property's highest and best use is compatible with assessing each individual parcel even when there are restrictions on the property.  There, the taxpayer justified its

25

bulk assessment because the condominium units at issue could not be sold individually. 280 Va. at 561-62, 701 S.E.2d at 793. We held that this restriction did not alter either the requirement that the units be assessed individually or the taxpayer's burden to establish fair market value. Id. at 565, 701 S.E.2d at 795. Such "market-driven impediments to selling the units individually and limitations on the rental income that can be realized" could, however, "affect each unit's fair market value." Id. The same applies here. The particular restrictions that apply to the Properties undoubtedly affect the fair market value of each of the eight parcels, but they do not obviate JWP's burden to prove the fair market value of each parcel. See West Creek, 276 Va. at 417, 665 S.E.2d at 847 ("to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, a taxpayer must necessarily establish the property's fair market value"). That burden also is not affected by the circuit court's finding that the City committed manifest error in its assessments of the eight parcels. See TB Venture, 280 Va. at 563, 701 S.E.2d at 794 (because the taxpayer has the burden of proving a tax assessment erroneous, the taxing authority's failure to prove the correctness of its assessment does not impeach that assessment).

CONCLUSION

In sum, "to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, a taxpayer must necessarily establish the property's fair market value."  West Creek, 276 Va. at 417, 665 S.E.2d at 847 (citation omitted).  By appraising the eight separate, non-contiguous parcels of real property in bulk as a single apartment complex, i.e., as one tax parcel, and then assigning a value to each constituent tax parcel based on a mathematical calculation, JWP failed as a matter of law to carry its burden of proving the fair market value of each parcel.

For these reasons, we will reverse the judgment of the circuit court and remand for entry of an order reinstating the City's tax assessments on the eight parcels for the tax years in question.

Reversed and remanded.


JUSTICE McCLANAHAN, with whom JUSTICE POWELL joins, dissenting.

I disagree that either TB Venture, LLC v. Arlington Cnty., 280 Va. 558, 701 S.E.2d 791 (2010) or West Creek Associates, LLC v. County of Goochland, 276 Va. 393, 665 S.E.2d 834 (2008) is dispositive of this case.  Applying an overly simplistic analysis, the majority has isolated one aspect of the holdings in TB Venture and West Creek to formulate its own policy of

27

appraisal methodology in Virginia.[1]  Furthermore, the majority

has summarily judged the highest and best use of the parcels

comprising Jackson Ward Apartments – a determination which

necessarily drives methodology, but which neither TB Venture nor

West Creek address.  In short, the majority has placed its

judicially created policy of appraisal methodology above the

constitutional mandate requiring assessment of property at fair

market value, and appointed itself both finder of fact and

expert to justify its reversal of the circuit court's judgment.

The circuit court properly recognized that the

determination of fair market value, not methodology, was the

controlling issue for its consideration.  As the circuit court

stated, "[u]nder the constitution, we have to approach these

assessments with the aim of determining what the fair market

value is.  We know from the experts that we have to determine

what the highest and best use is."  See Va. Const. art. X, § 2

(All assessments of real estate and tangible personal property

"shall be at their fair market value."); Code § 58.1-3201;

---

[1] The majority concludes that "[b]y appraising the eight
separate, non-contiguous parcels of real property in bulk as a
single apartment complex, i.e., as one tax parcel, and then
assigning a value to each constituent tax parcel based on a
mathematical calculation, JWP failed as a matter of law to carry
its burden of proving the fair market value of each parcel."
Although it is not entirely clear what component of Joseph's
appraisal the majority rejects, or whether the majority rejects
his appraisal in its entirety, what is clear is that the
majority deems the appraisal improper as a matter of law.

28

<u>Shoosmith Bros. v. County of Chesterfield</u>, 268 Va. 241, 246, 601 S.E.2d 641, 644 (2004) (in assessing fair market value, property should be valued at its highest and best use).  Thus, as the circuit court correctly noted, determining the fair market value of the property is the overriding objective.  The method by which the value is determined is dependent on the highest and best use of the property to be valued.  "The Constitution does not prescribe that the valuation of all property for taxation shall be ascertained in the same way or manner.  It is not even implied.  In the nature of things, it could not be done.  The many kinds or species of property with their diverse characteristics render it impossible."  <u>R. Cross, Inc. v. City of Newport News</u>, 217 Va. 202, 206-07, 228 S.E.2d 113, 116 (1976) (internal quotation marks omitted).[2]

Joseph, a commercial real estate appraiser specializing in multifamily VDHA and low income tax properties, testified in detail as to how he determined the fair market value of each tax

_____

[2] The majority discusses at length two basic principles – that each tax parcel must be individually assessed by the taxing authority and that the taxpayer must establish the fair market value of the property.  <u>See, e.g.</u>, <u>West Creek</u>, 276 Va. at 414-15 & n.8, 665 S.E.2d at 846 & n.8 (discussing requirement that tax parcels be "assessed individually"); <u>TB Venture</u>, 280 Va. at 563-64, 701 S.E.2d at 794 (discussing requirement that taxpayer establish the property's fair market value).  But these principles are not disputed by JWP and the application of these principles does not compel reversal of the circuit court's judgment since Joseph did value each tax parcel.  The majority simply rejects his values as a matter of law.

29

parcel. His values were based on his appraisal of the parcels comprising Jackson Ward Apartments according to their highest and best use as part of a single multifamily apartment community. Joseph explained that under the Uniform Standards of Appraisal Practice, he must consider the eight tax parcels as one property from a legally permissible point of view, and that it would have been appraisal error for him to value the Property as single-family homes, duplex homes, or anything other than an 18-unit affordable multifamily rental housing community. He further testified his determination of value for each parcel using an "allocation method" was a valid technique for apartment communities and the same method used by the City on other apartment communities.

Persuaded by Joseph's opinion regarding the highest and best use for the parcels comprising Jackson Ward Apartments and his utilization of the income method appropriate for appraisal of apartment communities, the circuit court ruled that JWP proved the fair market value of each parcel. In doing so, the circuit court found that the City's determination of highest and best use ignored "the reality of the situation" in light of evidence, found credible by the circuit court, that the parcels are bound together, must legally be operated as multifamily affordable rental housing, and could not be sold as separate parcels. In fact, the evidence established that the City

initially worked with RRHD to bind these parcels together for multifamily affordable rental housing and has continued to approve the operation of the parcels as an apartment community.[3] As we have previously held, "[i]n cases where the circuit court is presented with such conflicting testimony, we 'will defer to the circuit court's judgment of the weight and credibility to be given [the witness'] testimony.' " County of Albemarle v. Keswick Club, L.P., 280 Va. 381, 388, 699 S.E.2d 491, 495 (2010) (quoting Board of Supervisors v. HCA Health Servs., 260 Va. 317,

---

[3] Before the parcels were acquired by JWP, the City of Richmond and the RRHA presented JWP with a purchase contract that packaged these tax parcels together for renovation and operation as one affordable rental housing development. The project resulted from an application made by the City and RRHA to HUD for Section 8 funds in an effort to rejuvenate deteriorated areas of the City and decentralize assisted housing in connection with the City's Neighborhood Strategies program. A subsequent renovation was undertaken by JWP thirteen years following its purchase and was also financed through VHDA. The renovations were endorsed by the City in a letter to the Deputy Director of the Department of Housing & Community Development stating as follows:

> The construction or rehabilitation of the Jackson Ward Apartments and the allocation of loan and/or grant money from the Virginia Housing Partnership and federal housing tax credits available under Internal Revenue Code Section 42 for that development will help meet the housing needs and priorities outlined in the City of Richmond's 1993 Comprehensive Housing Affordability Study (CHAS).
> This project meets the stated priority of neighborhood preservation to conserve and improve physical structures. This project is in census tract 302 which the City has targeted as an area in which to concentrate its rehabilitation efforts.

31

332, 535 S.E.2d 163, 171 (2000)).  Departing from this general rule, the majority judges Joseph's opinion not worthy of credibility and rejects his values as being the product of appraisal methodology it deems improper as a matter of law.

Neither the Constitution nor the Code mandates, however, that the value of each tax parcel comprising Jackson Ward Apartments be determined without consideration of the other parcels, or that the highest and best use of the parcels be anything other than an apartment community.[4]  That, alone, distinguishes TB Venture from this case.  In TB Venture, we upheld the circuit court's determination that the taxpayer failed to establish the fair market value of each condominium unit where the taxpayer's expert valued the condominium units as a whole and allocated an amount to each unit based on the unit's pro rata share of overall income.  280 Va. at 565, 701 S.E.2d at 795.  Although the taxpayer appraised the condominium units as rental units, because Code § 55-79.42 requires each unit to be

_____

[4] Although Code § 58.1-3302, relied on by the City, requires the table of town or city lots to contain the name of the owner, the number of each lot, the value of the buildings on the lot, the value of the lot including buildings, and the amount of tax at the legal rate, this administrative record-keeping provision does not address the methodology to be used in determining the value of each lot.  The majority cites several additional statutory provisions to reinforce its point that tax parcels must be individually assessed, see Code §§ 58.1-3281, -3285, -3290, -3303 and -3309, none of which addresses appraisal methodology applicable in this case.

32

appraised independently from the other units, the condominium complex could not be appraised as an apartment community notwithstanding testimony that there was no market for sale of one condominium. This was so because the highest and best use of condominium units, registered as such, is mandated by statute. See Orchard Glen East, Inc. v. Board of Supervisors, 254 Va. 307, 311-12, 492 S.E.2d 150, 153 (1997) (Under Code § 55-79.42, upon recordation of the condominium units, a condominium complex may not be treated as an apartment complex for purposes of valuing the condominium units for tax assessment). Since Code § 55-79.42 does not apply to the parcels comprising Jackson Ward Apartments, it does not prohibit appraisal of the parcels as an apartment community.[5]

Instead of analyzing whether the evidence supports the circuit court's finding that JWP proved the fair market value of the parcels comprising Jackson Ward Apartments, as the Court did in West Creek, the majority singles out methodology as the guiding principle in valuing real property and disregards the significance of the property's highest and best use to that methodology. In West Creek, we affirmed the circuit court's

_____

[5] While acknowledging Code § 55-79.42 does not govern this case, the majority reasons that individual assessment is a requirement applicable to all tax parcels. Under the majority's reasoning, then, any methodology comparable to that used by the taxpayer in TB Venture is improper, as a matter of law, for all tax parcels. But this rationale ignores a property's highest and best use, which necessarily controls the methodology.

33

ruling that the taxpayer failed to prove the fair market value of the parcels at issue after reviewing the totality of evidence considered by the circuit court and the basis for its ruling.[6] In upholding the circuit court's findings, we recognized that "[i]t was within the province of the court, as the fact-finder, to determine the credibility of the witnesses." West Creek, 276 Va. at 416, 665 S.E.2d at 847 (internal quotation marks omitted). Reviewing the evidence before the circuit court and deferring to its role as fact-finder, we could not say that the circuit court's findings were "plainly wrong or without evidence to support them." Id. at 417, 665 S.E.2d at 847. The majority, however, dispenses with the review it undertook in West Creek,

---

[6] The circuit court ruled the taxpayer failed to prove fair market value of the parcels at issue for "several reasons." West Creek, 276 Va. at 417, 665 S.E.2d at 847. It found the taxpayer's expert appraiser "had not conducted an independent appraisal" but valued the 144 parcels at the sale price, which was negotiated as a bulk sale due to the large acreage. Id. The circuit court also noted that the method of spreading the value of the 2,500-acre development across the 144 parcels was "not persuasive" since the expert ignored the " 'economy of scale' " realized considering the sale price was discounted due to the large number of acres. In weighing the evidence before it, the circuit court found the testimony from the County's expert " 'the most compelling.' " Id. at 416, 665 S.E.2d at 847. The circuit court was persuaded by the expert's testimony that the highest and best use of the Park property was sale as individual parcels, not as a sale of "in excess of 2,000 acres" and that "[r]elying on [the bulk sale of the 2,500 acres] as an independent indicator of value for any of the 144 parcels would produce an appraisal report that would lack total credibility" and "be grounds for possible dismissal from The Appraisal Institute and probably revocation of one's appraisal license." Id. at 406, 665 S.E.2d at 841.

extrapolates from West Creek a finding that was affirmed because it was supported by the evidence, and adopts it as the determining principle of law in this case to rationalize its reversal of the circuit court's judgment.

In sum, TB Venture and West Creek do not support the majority's conclusion that Joseph's appraisal of the parcels comprising Jackson Ward Apartments was improper as a matter of law. Neither case purports to establish any rule of appraisal methodology or dictates the determination of highest and best use of the parcels comprising Jackson Ward Apartments. In removing issues involving appropriate appraisal methodology from the realm of expert opinion and assuming for itself the role of final arbiter of proper appraisal practice in Virginia, I believe the majority has set a dangerous precedent. More importantly, I believe the majority's singular focus on methodology jeopardizes the constitutional right to just valuation of property.