## CIRCUIT COURT OF FAIRFAX COUNTY

Vienna Metro, L.L.C.

v.

Fairfax County
Board of Supervisors

April 23, 2013

Case No. CL-2011-6322

By Judge Dennis J. Smith

The Plaintiff, Vienna Metro, L.L.C., asserts that Fairfax County erred in its assessment of the value of their property for tax years 2008, 2009, 2010, and 2011. The Virginia Constitution and the Code of Virginia require that localities assess taxable property at its fair market value. Va. Const., art. X, § 2; Va. Code § 58.1-3201; see also *Keswick Club v. County of Albemarle*, 273 Va. 128, 136, 639 S.E.2d 243 (2007). A taxpayer may challenge the locality's assessment in the Circuit Court; however, the Court must presume "that the valuation determined by the assessor or as adjusted by the Board of Equalization is correct." Virginia Code § 58.1-3984. In order to rebut the presumption of correctness, a taxpayer must "show by a preponderance of the evidence that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application and that it was not arrived at in accordance with generally accepted appraisal practices, procedures, rules, and standards as prescribed by nationally recognized professional appraisal organizations such as the International Association of Assessing Officers (IAAO) and applicable Virginia law relating to valuation of property. Mistakes of fact, including computation, that affect the assessment shall be deemed not to be in accordance with generally accepted appraisal practice." *Id.*

Lack of uniformity in assessment was not alleged by Vienna Metro, and they conceded that the evidence presented was insufficient to establish that the County employed improper methodology or disregarded controlling evidence in arriving at its assessment. Vienna Metro, therefore, bases its challenge to the assessments on what they claim was a manifest error. To establish manifest error in the assessment, the taxpayer must prove by a clear preponderance of the evidence that the assessment was not made in accordance with generally accepted practices by showing that the assessor employed improper methodology or totally disregarded controlling evidence in making the assessment, neither of which is asserted in this case. According to Vienna Metro, however, a manifest error exists if the taxpayer establishes a significant disparity between the actual fair market value of the property and the assessed value. To support this argument they cite *West Creek Associates v. County of Goochland,* 276 Va. 393, 414, 665 S.E.2d 834 (2008). Fairfax County responds that Vienna Metro improperly reads *West Creek,* but I reject the County's attempts to distinguish *West Creek* and find it controlling.

In the *West Creek* opinion, the Virginia Supreme Court, by Justice (now Chief Justice) Kinser, restated longstanding principles but clarified them by holding that manifest error can also be established solely by evidence showing that real property is assessed at more than its fair market value. If, however, "a taxpayer attempts to prove manifest error solely by showing a significant disparity between fair market value and assessed value without showing that the taxing authority employed an improper methodology in arriving at the property's assessed value, the taxpayer cannot prevail 'so long as the assessment comes within the range of a reasonable difference of opinion . . . when considered in light of the presumption in its favor'." *West Creek,* 276 Va. at 414 (citing *City of Norfolk v. Snyder,* 161 Va. 288, 293, 170 S.E. 721 (1933)).

As the Virginia Supreme Court has stated, "because fixing property values is a matter of pure opinion, the courts must be hesitant, within reasonable bounds, to set aside the judgment of assessors; otherwise, the courts will become boards of assessment 'thereby arrogating to themselves the function of the duly constituted tax authorities'." *City of Richmond v. Gordon,* 224 Va. 103, 110-11, 294 S.E.2d 846 (1982) (citing *Richmond, Fredericksburg, and Potomac RR. v. State Corporation Commission,* 219 Va. 301, 313, 247 S.E.2d 408 (1978)). *West Creek* implements these concerns by holding that, if the only basis for the challenge is a disparity between the assessment and the actual fair market value, the disparity only constitutes manifest error if the County's assessment is not within the reasonable range of reasonable differences of opinion regarding fair market value.

As stated above, the Virginia Constitution mandates that all assessments of real property "shall be at their fair market value." Va. Const., art. X, § 2; see also *City of Richmond v. Jackson Ward Partners,* 284 Va. 8, 18,

726 S.E.2d 279 (2012). Fair market value of a property is "its sale price when offered for sale 'by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it'." *Keswick Club v. County of Albemarle*, 273 Va. 128, 136, 639 S.E.2d 243 (2007) (citing *Tuckahoe Woman's Club v. City of Richmond*, 199 Va. 734, 737, 101 S.E.2d 571 (1958)). The Virginia Supreme Court has also opined that fair market value "is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, speculative, or possible value, based on future expenditures and improvements." *West Creek*, 276 Va. at 416 (citing *Fruit Growers Express Co. v. City of Alexandria*, 216 Va. 602, 609, 221 S.E.2d 157 (1976)).

In its effort to establish fair market value for the property for the years in question, Vienna Metro relies upon the report and testimony of Mr. David Lennhoff, an eminently qualified expert in valuing commercial real estate. In examining Mr. Lennhoff's expert opinion regarding value, I must examine the basis for his opinion, the manner in which he arrived at it, any underlying facts and data upon which he relied in reaching his conclusion. Among other issues, his analysis of the comparable nature of the properties employed "adjustments" which his report stated were "not quantifiable but simulate general trends in the market." (¶ 37, at page 67.) I find these "adjustments" to be a mix of objective and subjective standards that is ingenious but troubling, and they severely undermine the credibility of his opinions. Additionally, there are variations in emphasis, which might even be characterized as internal inconsistencies, such as the differing degrees of importance Mr. Lennhoff attaches in his testimony and report to the proximity of Metro access.

I further find that Mr. Lennhoff's adjustment for proffers made to Fairfax County in connection with the Mosaic property, the property he stated was one of the three most meaningful comparable sales, raise further issues. The County's expert, Mr. Peter F. Korpacz, gave credible testimony that the private costs of the Mosaic proffers would be $50 million and upward. This is substantially more than the almost $15 million in proffers attributable to the Vienna Metro share of proffers in connection with its property. Using the low floor to area ratio price (hereinafter "far") in the sale of the Mosaic property without adequately adjusting it for the much larger proffer cost does not adequately account for this differential. His testimony regarding the absence of a proffer cost figure from the buyer did not persuade me that use of the actual "far" sales price would be appropriate.

Even if Mr. Lennhoff's initial fair market value for each year was persuasive, the next step of his analysis applies a discount rate for the delay in development. His selection of discount rate is 20%, which is reasonable and corresponds to the discount rate used by Mr. Korpacz. Unlike Mr. Korpacz, however, he also utilizes three different time frames for delay due to the legal issues with Pulte: three years, five years, and seven years. The

basis for his opinion of the time needed to resolve legal issues and develop the property was not explained to the satisfaction of the court. Mr. Lennhoff indicated that he spoke with "real estate development participants in the D.C. area" and obtained a range of discounts using various methodologies. He did not specify the information he provided to the sources and did not indicate that he revealed the location of the property, the parties involved, or the terms of the declaration which supported Plaintiff's position in any lawsuit against Pulte. While the issues with Pulte existed from 2007, Vienna Metro discussed the issues with Pulte but did not institute legal action until 2010. This raises a separate question as to whether market conditions influenced the decision to delay filing suit, a question which was not explored to the satisfaction of the court.

I find Mr. Lennhoff engaged in conjecture regarding time frames for resolution of the legal issues between Vienna Metro and Pulte and the probabilities for each of these time frames. This rendered his ultimate conclusions as to fair market values opinions speculative. I further find that, even if his opinion that the legal issues could extend the time frames for development of the property by three, five, or seven years is not conjectural and speculative, the basis for his opinion in this regard is unpersuasive. In conclusion, considering all aspects of his testimony and reports, as well as all other evidence presented, Mr. Lennhoff's analysis has not persuaded me by a preponderance of the evidence that his valuations are the fair market of the subject property for any of the four years at issue.

The court is not aware of any case which directly holds that the range of reasonable expert opinions regarding value is so broad that fair market value cannot be proven and, therefore, the assessment must be set aside. In any event, I do not find that this is the situation with regard to the Vienna Metro property for the years in question as Mr. Korpacz has persuaded the court that his opinions are credible opinions of fair market value for the property in 2008, 2009, 2010, and 2011. While Mr. Korpacz's testimony regarding fair market values contains issues similar to those upon which I rejected Mr. Lennhoff's valuations, I find his testimony and report credible and not speculative as to fair market values for the years in question. Mr. Korpacz's use of comparable sales, his more reasonable estimate of time to conclusion of any lawsuit with Pulte, and his adjustments do not contain speculation or conjecture. As the court accepts Mr. Korpacz's testimony regarding fair market value of the property for 2011, Vienna Metro's challenge to the 2011 assessment fails as Mr. Korpacz was of the opinion that the property was undervalued by the County for that year.

As for the assessments for 2008, 2009, and 2010, however, Mr. Korpacz has opined that the county's assessment exceeded his opinion of fair market value for each of those years. *Fray v. County of Culpeper*, 212 Va. 148, 183 S.E.2d 175 (1978), is instructive on the issue of whether a petitioner has established that an assessment was erroneous when both the locality and the

petitioner present credible evidence which establish a fair market value less than the assessment. In that case, the County presented evidence that the fair market value of the property was $25,000 and the petitioner presented evidence that the fair market value was between $16,500 and $17,000. The trial court did not find the County erred in its fair market value assessment of $37,440, calculated by applying Culpeper County's existing standard tax on "25% of fair market value." The Supreme Court of Virginia, however, held that, since all fair market value valuations presented at trial were less than the assessed fair market value, the trial court committed error in concluding that the petitioner had not carried its burden to show "that the assessment of the property was based on a value in excess of fair market value." *Fray*, 212 Va. at 151.

Existing case law makes it clear that, even if the taxpayer establishes a disparity between expert opinion of fair market value and the County assessment, the taxpayer still cannot prevail if the County assessment comes within the range of a reasonable difference of expert opinion. *West Creek, supra*, at 414. So, in light of *Fray*, the question remains: Does the disparity between Fairfax County's assessment and Mr. Korpacz's testimony regarding fair market value (accepted by the court as credible evidence of fair market value) establish that the County's assessment is not within the range of a reasonable difference of opinion as to the property's value?

A theme which ran through the expert testimony from both parties in this case related to the difficulty in establishing fair market value due to the scarcity of good comparable sales, the uncertainty in the market, and the legal situation inhibiting development of the land. While these variables may not prevent formation of an opinion regarding the value of the property, they impact the size of the reasonable range of expert opinions regarding value. The logical conclusion is that the greater the uncertainty in variables that affect value, the broader the range of likely opinions. As a result, even if experts exercised sound judgment in identifying and weighing the variables, their ultimate conclusions could be vastly different. As added emphasis, it is a factor in the Court's conclusions that the uncertainty involved in the subject properties' developmental timeline and the market conditions stretches the bases of the opinions to the edges of speculation and conjecture and, in the case of aspects of Mr. Lennhoffs testimony, beyond. Accordingly, in the absence of evidence regarding flawed methodology used by the County in assessing the property and evidence to establish that the County disregarded controlling evidence in arriving at its valuations for each of the contested years, Plaintiff's challenges to the assessments for 2008, 2009, 2010, and 2011 fail.