Present:  Koontz, Kinser, Lemons, Goodwyn, Millette, and Mims,
          JJ., and Russell, S.J.

TB VENTURE, LLC
                                        OPINION BY
 v.  Record No. 091621          JUSTICE CYNTHIA D. KINSER
                                     November 4, 2010
ARLINGTON COUNTY

            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    William T. Newman, Jr., Judge

     In this appeal involving a taxpayer's petition to correct

erroneous tax assessments, the dispositive issue is whether the

taxpayer carried its burden to present evidence establishing the

fair market value of certain condominium units.  Because the

taxpayer failed to establish the fair market value of each

individual unit, we will affirm the judgment of the circuit

court striking the taxpayer's evidence.

                 RELEVANT FACTS AND PROCEEDINGS[1]

     The real property at issue consists of 21 condominium units

owned by TB Venture, LLC (TB Venture) and located in Arlington

County (the County).  TB Venture acquired the units in 2006-2007

for the purchase price of $2,000,000.  The units are part of a

condominium development known as "The Odyssey Condominium

Project" (The Odyssey), which consists of residential units and

_____

     [1] We will recite only those facts relevant to the
dispositive issue.

ground-level retail space.[2]  Pursuant to a "Community Benefit Housing Program Agreement" (the Agreement) between the developer of the project and the County, 21 units in The Odyssey are designated as community benefit units, or CBUs.  The Agreement specified that the 21 units would consist of 6 three-bedroom townhouses and 15 two-bedroom flats.  The Agreement requires the CBUs to be rented to qualifying, low-income households for a period of 40 years and specifies limitations on rental amounts and occupancy.  The Agreement further requires that a "Declaration of Covenants" be recorded "among the land records of [the] County."

For the 2007 tax year, the County assessed the 21 units as having a fair market value of $8,370,400.  The County's Department of Real Estate Assessments reduced the assessment to $5,364,864, and the Board of Equalization (BOE) further lowered the assessed value to $3,248,100.  The BOE assessed the 6 townhouses as having a fair market value of either $187,300 or $187,400 each, and the 15 flats as having a fair market value of $141,600 each.  For the 2008 tax year, the County assessed the

_____

[2] Prior to TB Venture's acquisition, the developer transferred the units to another entity, and the development plans were altered, changing the units from rental apartments to condominiums pursuant to the provisions of the Condominium Act, Code §§ 55-79.39 through -79.103.

2

townhouses at $210,900 each and the flats at $186,200 each, for a total fair market value of $4,058,400 for the 21 units.

Pursuant to Code § 58.1-3984, TB Venture filed a complaint to correct erroneous tax assessments, alleging that the County's assessments for the 2007 and 2008 tax years were "greatly in excess of 100 [percent] of the fair market value of each of the [u]nits," and thus violated the provisions of Code § 58.1-3201 requiring real property to be assessed at 100 percent of its fair market value. TB Venture asked the circuit court to reduce the assessments to amounts representing the 21 units' fair market value.

At trial, TB Venture presented testimony from, among others, Thomas J. Shields, who qualified as an expert in real estate appraisal. Shields testified that to appraise the subject property, he utilized a "direct capitalization methodology, which projected . . . a stabilized year of income and expenses to derive . . . a net operating income." He then capitalized the net operating income "at an appropriate capitalization rate to determine the market value." Shields stated that he assessed the units on a "leased fee" rather than a fee simple basis. According to Shields, that methodology enabled him to take into account the 40-year rental restrictions encumbering the units. Using his methodology, Shields opined

3

that the fair market value of the 21 units was $2,160,000 as of January 1, 2007, and $2,000,500 as of January 1, 2008.

Based on those figures, Shields then allocated a value to each unit "based on the pro rata share of the income of each of the units derived by the overall income." Shields admitted that his valuation considered "all 21 units as a whole." He explained that he did not determine the fair market value of each unit because "the units [could not] be sold individually as condominiums" but are "basically tied together through this covenant." In his opinion, there is no market for "one rent-restricted unit as an investment."[3]

On cross-examination, Shields stated that TB Venture's purchase of the property was a bulk sale, i.e., "[n]o individual prices were negotiated." Similarly, Shields admitted that his valuation was a "bulk valuation," which he believed was "the only way to look at it in this particular case." Shields reaffirmed that he had "appraised the entirety of 21 units and then allocated values to each individual condominium." When asked whether his allocation of value was based on market value, Shields replied it was "purely an allocation based on the income in place."

---

[3] The Agreement required that the CBUs be rented.

At the close of TB Venture's evidence, the County moved to strike the evidence, arguing, in part, that TB Venture failed to present evidence showing the fair market value of each individual unit.  According to the County, TB Venture thus failed to carry its burden not only to show manifest error, but also to establish the fair market value of the real property. The circuit court granted the motion to strike.  In its final order, the court held that TB Venture "failed to prove the value of the subject properties, and . . . failed to show either manifest error or total disregard of controlling evidence in the making of the assessments at issue and therefore failed to overcome the presumption of correctness which applies to the assessments."  We awarded TB Venture this appeal.

                              ANALYSIS

On appeal, TB Venture challenges the circuit court's judgment striking its evidence.  When ruling on a motion to strike a plaintiff's evidence, a trial court "is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." James v. City of Falls Church, 280 Va. 31, 38, 694 S.E.2d 568, 572 (2010) (citing Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997)).  "The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff

                                 5

unless it would defy logic and common sense."  Austin, 254 Va. at 138, 486 S.E.2d at 287; see also Meador v. Lawson, 214 Va. 759, 761, 204 S.E.2d 285, 287 (1974).  On appeal, when this Court reviews a trial court's decision to strike a plaintiff's evidence, we likewise view the evidence in the light most favorable to the plaintiff.  Lee v. Nationwide Mut. Ins. Co., 255 Va. 279, 284, 497 S.E.2d 328, 330 (1998); James, 280 Va. at 38 n.4, 694 S.E.2d at 572 n.4.

"All assessments of real estate . . . shall be at their fair market value."  Va. Const. art. X, §§ 1, 2; see also Code § 58.1-3201.  "A taxing authority's assessment is presumed to be correct," and a taxpayer challenging the assessment of his or her real property "has the burden to rebut that presumption by establishing that the real property in question is assessed at more than fair market value or that the assessment is not uniform in its application."  West Creek Assocs., LLC v. County of Goochland, 276 Va. 393, 409, 665 S.E.2d 834, 842 (2008) (citing Code § 58.1-3984(A)).  Even if the taxing authority is unable to present evidence proving the correctness of its assessment, "this does not impeach it since the taxpayer has the burden of proving the assessment erroneous."  Id. at 409, 665 S.E.2d at 843 (internal quotation marks omitted).  To rebut the presumption of correctness, "a taxpayer must show by a clear preponderance of the evidence that the taxing authority

6

committed manifest error or totally disregarded controlling evidence in making the assessment." Id.; accord Tidewater Psychiatric Inst., Inc. v. City of Virginia Beach, 256 Va. 136, 141, 501 S.E.2d 761, 763 (1998). Manifest error may be shown by proving that the taxing authority employed an improper methodology in arriving at a property's assessed value or by establishing "a significant disparity between fair market value and assessed value . . . 'so long as the assessment [does not come] within the range of a reasonable difference of opinion, . . . when considered in light of the presumption in its favor.' " West Creek, 276 Va. at 414, 655 S.E.2d at 845 (quoting City of Norfolk v. Synder, 161 Va. 288, 293, 170 S.E. 721, 723 (1933)).

> In every instance, however,
>
> to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, a taxpayer must necessarily establish the property's fair market value. This is so irrespective of whether a taxpayer is attempting to show manifest error or disregard of controlling evidence by proving a significant disparity between fair market value and assessed value, or by establishing a flawed methodology by the taxing authority in setting the assessed value.

Id. at 417, 665 S.E.2d at 847 (citation omitted). This Court generally has defined the term fair market value as real property's "sale price when offered for sale 'by one who desires, but is not obliged, to sell it, and is bought by one

7

who is under no necessity of having it.' " Keswick Club, L.P. v. County of Albemarle, 273 Va. 128, 136, 639 S.E.2d 243, 247 (2007) (quoting Tuckahoe Woman's Club v. City of Richmond, 199 Va. 734, 737, 101 S.E.2d 571, 574 (1958)); see also West Creek, 276 Va. at 416, 665 S.E.2d at 846 ("[F]air market value 'is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, speculative or possible value, based on future expenditures and improvements.' " (quoting Fruit Growers Express Co. v. City of Alexandria, 216 Va. 602, 609, 221 S.E.2d 157, 162 (1976))).

Viewing the evidence in the light most favorable to TB Venture, we conclude that the circuit court did not err in striking TB Venture's evidence. As we have already noted, the taxpayer's burden to prove that real property is assessed at more than its fair market value necessarily requires that the taxpayer establish the property's fair market value. West Creek, 276 Va. at 417, 665 S.E.2d at 847. Here, because the real property at issue consists of condominium units, TB Venture was required to produce evidence to show the fair market value of each individual unit.

The provisions of Code § 55-79.42 state that "each condominium unit constitutes for all purposes a separate parcel of real estate." Additionally, "[i]f there is any unit owner other than the declarant, each unit, together with its common

element interest . . . shall be separately assessed and taxed." Code § 55-79.42. TB Venture, the current owner of the 21 units, was not the "declarant" of The Odyssey.[4] In fact, the 21 units at issue here had been registered as condominiums prior to being acquired by TB Venture. Thus, just as the County was required to separately assess each unit, TB Venture was required to establish the fair market value of each unit. See Orchard Glen East, Inc. v. Board of Supervisors of Prince William County, 254 Va. 307, 312, 492 S.E.2d 150, 153 (1997) (holding that Code § 55-79.42 requires individual assessment of condominiums regardless of ownership); West Creek, 276 Va. at 414 n.8, 665 S.E.2d at 846 n.8 (listing statutes that require parcels of real property to be assessed individually); see also Code § 58.1-3290.

But, TB Venture's expert witness admitted that he did not separately appraise the units at issue. Instead, Shields valued the 21 units as a whole and then allocated an amount to each unit based on the unit's pro rata share of the overall income. Shields used such methodology because, in his opinion, there is no market for "one rent-restricted" condominium. Similarly, TB Venture argues on appeal that allocating each unit's fair market value pro rata based on income is warranted "because income is

---

[4] The "declarant" is, among other things, the entity that "applies for registration of the condominium." Code § 55-79.41.

9

the only distinguishing feature that separates these units." According to TB Venture, each unit's location in the complex, its amenities, and even its view are irrelevant because of the restrictions contained in the Agreement.

To the extent there are market-driven impediments to selling the units individually and limitations on the rental income that can be realized, such factors may affect each unit's fair market value. See West Creek, 276 Va. at 416, 665 S.E.2d at 846 ("[F]air market value is the present actual value of the land with all its adaptations to general and special uses.") (internal quotation marks omitted). But, they do not alter the statutory requirement that condominiums be treated as separate parcels of real estate and separately assessed. Code § 55-79.42. Nor do such factors alter TB Venture's burden to establish each unit's fair market value in order to show that its real property is assessed at more than fair market value as required by Code § 58.1-3984(A). See West Creek, 276 Va. at 417, 665 S.E.2d at 847. TB Venture failed to carry that burden, and the circuit court properly struck its evidence.

CONCLUSION

For these reasons, we will affirm the circuit court's judgment.[5]

Affirmed.

---

[5] In light of the Court's decision, it is not necessary to address TB Venture's other assignments of error.