# CIRCUIT COURT OF THE CITY OF NORFOLK

United Services
Automobile Assn.
and U.S. Real Estate, L.P.

v.

City of Norfolk

March 19, 2012

Case No. (Civil) CL10-6578

By Judge Louis A. Sherman

This matter is before the Court following the conclusion of a trial, the submission of trial briefs by counsel, and a hearing for counsels' closing arguments. For the reasons expressed below, the Court will grant the City of Norfolk's motion to strike the evidence and uphold the 2009 and 2010 tax assessments of the property located at 5800 Northampton Boulevard in the City of Norfolk.

## Background

United Services Automobile Association ("USAA") and U.S. Real Estate, Limited Partnership ("U.S. Real Estate") (the "Petitioners") filed a Complaint for Correction of Erroneous Assessment of Real Estate. The Petitioners own two pieces of real property located at 5800 Northampton Boulevard in the City of Norfolk (the "Property"). The first parcel contains an office building, a parking deck, a child day care center building, a surface parking lot, and landscaped grounds ("Office Building"). The second parcel is a recreational lot with basketball and tennis courts and a pavilion ("Recreation Island"). Defendant City of Norfolk assessed the value of the

Office Building for tax purposes in 2009 and 2010 at $35.5 million, and the Recreation Island at $1.2 million and $1.1 million respectively for those tax years. The Petitioners seek a significant reduction in the fair market value of the Property for both tax years in order to reduce the tax assessments of the Property.

USAA announced in February 2009 that it would be scaling back its Norfolk operations and vacating a majority of the Property. USAA transferred title to its affiliate U.S. Real Estate and decided to retain occupancy of a portion of the Office Building for a period of time. According to the Petitioners, the Office Building would be leased out to general market tenants by any future owner. The Petitioners argue that, due to this plan, potential owners would have to find new tenants, pay leasing commissions, make costly tenant improvements to make the Office Building suitable, and make other capital improvements. Petitioners assert that these factors were not reflected in the City's determination of the fair market value of the Property. Petitioners claim that the fair market value of the Office Building should have been $18 million in 2009 and $19 million in 2010 respectively and that the value of the Recreation Island should have been $700,000 for both tax years. According to the Petitioners' expert appraiser, it is necessary in determining the highest and best use of the Property to address the issue that the sale of an owner-occupied building will result in the owner's leaving the building and will necessarily subject the building to significant leasing and renovation expenses to re-lease the premises.

The City, however, claims that the Petitioners' determination of the Property's fair market value is defective because it completely omits the sales comparison analysis which is part of definition of fair market value. The City also argues that the Petitioners' definition of the highest and best use of the Property is inconsistent with the legal definition of fair market value. The Petitioners, according to the City, only introduced evidence of what an investor would reasonably expect to pay for the Property but *not* what a willing seller would accept.

Both the Petitioners and the City valued the Property using an income capitalization approach. The parties did not materially differ in their conclusion of the stabilized value of the Property, but the substantial additional deductions made by Petitioners are disputed by the City.

*Discussion*

A. *Motion to Strike the Petitioners' Evidence with Regard to the Office Building*

At the close of Petitioners' evidence, the City moved to strike their evidence as having failed to establish the Property's fair market value, which motion the City renewed at the close of evidence. The Court took

the City's motion under advisement. The City argues that Petitioners did not produce sufficient evidence to show the fair market value of the Office Building. Specifically, the City asserts that Petitioners introduced no evidence as to what a willing seller of the Office Building would have accepted from a willing buyer. The City also maintains that Petitioners applied costly leasing and renovation expense deductions to fair market value, which are not supported by applicable law.

In *TB Venture, L.L.C. v. Arlington County*, 280 Va. 558, 562, 701 S.E.2d 791, 793 (2010), the Virginia Supreme Court held that, when ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to the plaintiff and any reasonable inferences that may be drawn from such evidence. The trial court is not to judge the weight and credibility of the evidence and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense.

## 1. *Standard of Review*

Virginia Code § 58.1-3984 provides that the burden of proof is upon the taxpayer to show by a preponderance of the evidence that the property in question has been assessed at more than its fair market value or that the assessment is not uniform in its application or that the assessment is otherwise invalid or illegal. According to Virginia Code § 58.1-3983.1, the tax assessment is deemed to be prima facie correct. To rebut the presumption of correctness, a taxpayer must show "manifest error or total disregard of controlling evidence in making the assessment." *Tidewater Psychiatric Institute, Inc. v. City of Virginia Beach*, 256 Va. 136, 501 S.E.2d 761 (1998).

In *West Creek Associates, L.L.C. v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008), the Supreme Court of Virginia held that, to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, a taxpayer must necessarily establish the property's fair market value. This is so, regardless of whether a taxpayer is attempting to show manifest error or disregard of controlling evidence by proving a significant disparity between fair market value and assessed value or by establishing a flawed methodology by the taxing authority in setting the assessed value.

Petitioners claim that the tax assessments for both tax years in question exceed the fair market value of the Property and that the City committed manifest error and totally disregarded controlling evidence of market value in making the assessments.

388

## 2. *Fair Market Value; Highest and Best Use of the Property*

The Constitution of Virginia commands that "[a]ll assessments of real estate . . . shall be at their fair market value." Va. Const., art. X, § 2. The fair market value of property is defined as the price which one, under no compulsion to sell, is willing to accept for property which is for sale, and which another, under no compulsion to buy, being desirous and able to buy, is willing to pay. *Tuckahoe Woman's Club v. City of Richmond*, 199 Va. 734, 101 S.E.2d 571 (1958).

There are three generally accepted methods used to aid in the determination of fair market value: the cost approach, the sales approach, and the income approach. *Keswick Club, L.P. v. County of Albemarle*, 273 Va. 128, 639 S.E.2d 243 (2007). The parties did not materially disagree on the basic income capitalization valuation of the Office Building in the $35 million range for the relevant tax years. However, Petitioners made several significant downward adjustments in the amount of approximately $15 million for each tax year, which reflect the costs of leasing and renovating the Office Building so that it achieves what Petitioners' term a "fully stabilized tenancy": a deduction for large vacancy percentage, a deduction for tenant improvements, a deduction for leasing commissions, an adjustment for USAA's current lease, and a deduction for other capital expenditures. Petitioners argue that anyone buying the Office Building would necessarily have to spend a substantial amount of money to convert the space into multi-tenant office space because the purchaser would be acquiring a largely empty building. It is the Petitioners' position that a purchaser would need three years to bring the Office Building to full capacity. Tr. at 75–76. The City in its post-trial brief argues that the adjustments made by Petitioners reflect the position of an *investor only* and what that investor would reasonably pay for the Property and that the Petitioners completely ignore what a willing seller would accept for the property. The City also argues that Petitioners' position utterly excludes the possibility of the Office Building's being purchased for entire owner occupancy or even partial owner occupancy.

"Fair market value 'is the *present actual value of the land* with all its adaptations to general and special uses, and not its prospective, speculative, or possible value, based on future expenditures and improvements'." *West Creek Associates, L.L.C. v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008). In estimating the fair market value, *all* the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered. *Tuckahoe Woman's Club v. City of Richmond*, 199 Va. 734, 101 S.E.2d 571 (1958). *See also Fruit Growers Express Co. v. City of Alexandria*, 216 Va. 602, 221 S.E.2d 157 (1976) (affirming the trial court's granting of the city's motion to strike the property owners evidence).

This Court finds that Petitioners' valuations for the tax years in question, including several significant deductions discussed previously, are not persuasive. Petitioners' assessment of the Property is based solely on the theory that "the highest and best use of the office building is to remain an office building, but it will most likely house several tenants, instead of a single-owner occupant." Pet. Ex. 8 (Lennhoff 2009 Report) at 41. However, this theory is not supported by the law or evidence. The fair market value of the property has to reflect the present actual value of the property and not the prospective or speculative value based on possible future improvements or expenditures. *West Creek Associates, L.L.C. v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008). Petitioners agree that the valuation of the Property was not based on their "business plan" and that their methodology of the assessment would be the same *without regard to the vacancy of the building*. Tr. at 83. (emphasis added).

The Office Building was originally designed to suit the needs and corporate culture of the owner, USAA, and includes huge elevator lobbies and high ceilings. These amenities reflect the needs of accommodating a large organization, and there is no evidence that this building cannot continue to function as an owner-occupied commercial office building. This Court agrees with the City that Petitioners failed to consider full or even partial owner occupancy or sale and leaseback by the owner in their valuation of the property. Def. Ex. 10 (Romanesko Report) at 21. Petitioners argue that the sale of an owner-occupied building will necessarily result in the owner leaving the building and will subject the building to the previously stated costs to re-lease. Tr. at 56, 59. The Court considers this scenario as speculative and not supported by the evidence. There are several options which can reasonably happen after the sale of the owner-occupied building, and it is not possible to advance just the single theory presented by Petitioners. The definition of fair market value reflects *both* the willing seller and the willing buyer and cannot be limited by advancing just one theory in this instance to convert the owner occupied building to multi-tenant occupancy.

Petitioners rely on *Arlington County Board v. Ginsberg*, 228 Va. 633, 325 S.E.2d 348 (1985), to support the deduction of the leasing and renovation expenses from the stabilized value of the property. In *Ginsberg*, the court ordered reduction in the assessment where the evidence demonstrated major rehabilitation was necessary before the property could yield economic rents. The property in question was an office building, of which 80% was rented under a twenty-year lease. After expiration of the lease, the property required extensive renovation to make it attractive to future commercial tenants. In the case at bar, the Office Building is presently suitable to accommodate a large organization and can be used "as is," without any significant additional improvements or adjustments, as it was used by USAA during relatively recent times, two years ago. The probability that

the highest and best use of the building is to convert the building to multi-tenant space, which would require extensive leasing and renovation costs, is speculative as stated above. Petitioners did not present persuasive evidence that the highest and best use of the Office Building, based on market or external factors, is simply to convert the building to multi-tenant space.

The City's assessment of the value of the Property for the tax years in question took into consideration the economic rent, vacancy, and existing leases. Def. Ex. 10 (Romanesko Report) at 13-16. The additional deductions made by Petitioners were essentially already reflected in the City's stabilized value of the Property and are not supported by the law. The real estate to be taxed is the fee simple interest and not the value to a speculative potential investor.

### 3. *Fair Market Value; the Sales Approach*

In determining the fair market value of real estate, taxing authorities commonly use one or more of three valuation approaches: the cost approach, income approach, and sales approach. Each of these approaches utilizes different characteristics of a property to estimate fair market value, and each analyzes different elements of the property, which would likely affect the price a potential buyer would be willing to pay for the property on the open market. Ideally, an appraisal should, if possible, derive its final determination of a property's value using all three approaches in order to maximize the likelihood that the valuation accurately reflects the property's fair market value. *Keswick Club, L.P. v. County of Albemarle*, 273 Va. 128, 639 S.E.2d 243 (2007). An assessment based on a single approach to the determination of market value, where the taxing authority failed to consider and properly reject the other approaches, is not entitled to a presumption of validity. *Id.* at 248. *See also Board of Supervisors of Fairfax County v. HCA Health Services of Va.*, 260 Va. 317, 535 S.E.2d 163 (2000).

Petitioners' valuation of the Property was based on the income and cost approach methodology but "with all emphasis" on the income approach valuation. Pet. Ex. 8 (Lennhoff 2009 Report) at 95. However, their appraisal did not address the sales comparison approach, which, according to the Petitioners, was not useful due to the lack of comparability of the market data. Petitioners' appraiser states the he used sales data in developing the capitalization rate, but he did not develop the analysis for comparable sales. The capitalization rate is defined as any rate used to convert income into value. *The Dictionary of Real Estate Appraisal*, 5th ed. (Chicago: Appraisal Institute, 2010). He testified that the sales approach would not lead to credible results; therefore, it was not necessary. Tr. at 66–67. Petitioners' appraiser testified that the Office Building is a custom built property and it would be difficult to find another owner-user "capable and interested in all or most of the space." Pet. Ex. 8 (Lennhoff 2009 Report) at 95. The City

in its post-trial brief argues that a critical part of the legal definition of the fair market value is what a willing seller would accept for the building. Therefore, to meet the definition of fair market value, it is necessary to require sales analysis as a part of valuation of the Property. The City argues that there *are* comparable sales which are appropriate to consider in valuation of the Office Building.

The Court finds that there is sufficient market data to perform the sales comparison analysis. The Court finds that the Office Building *is* comparable to other buildings in the Hampton Roads area. Even though the building was built to accommodate one specific organization, this does not prevent the development of a comparable sales analysis of similar Class A office properties. Petitioners' appraiser actually used eight corporate comparable sales in developing the capitalization rate, despite his opinion that there are no comparable large Class A buildings in the area. Pet. Ex. 8 (Lennhoff 2009 Report) at 77–90, 95. He testified that there has been no sale of a significant owner-occupied building, with exception of the sale of Symantec building in Newport News, Virginia, that the Office Building had, in effect, been converted to income property by the Petitioners' action, and that, therefore, the income approach is the only relevant approach. Pet. Ex. 8 (Lennhoff 2009 Report) at 52.

The Court finds that Petitioners' appraisal should have contained the sales comparison approach to accurately reflect the Property's fair market value. The Office Building is not unique and comparable sales data was readily available to both parties. Petitioners' appraiser did not use the data to develop a sales comparison analysis. The City's appraisal, which the Court accepts, established that the failure to develop a sales comparison approach was "contrary to typical practice" and leads to the unreliable determination of the fair market value. Def. Ex. 10 (Romanesko Report) at 18. For example, the City cited as comparable office buildings located in Lake Wright Executive Center in Norfolk and in Virginia Beach, and the World Trade Center building also located in Norfolk. Petitioners' appraisal should have used all three valuation approaches when assessing the Property's value. Petitioners did not produce sufficient evidence that the sales approach was unnecessary and that the omission would not lead to unreliable results.

The Court is of opinion that the sales comparison analysis is relevant to the determination of a property's fair market value and should have been considered when assessing the Property here. An assessment may ultimately use a single method in valuation of the fair market value of the property, but, to fully and *accurately* reflect the value of the Office Building, all three approaches should have been used by Petitioners.

B. *Motion To Strike Petitioners' Evidence with Regard to the Recreation Island*

Petitioners did not specifically state how the City committed manifest error or that the controlling evidence of market value was disregarded in making the assessments of the Recreation Island. However, Petitioners claim that the tax assessments exceed the fair market value of the property, and they submitted evidence of fair market value of the Recreation Island. The City argues that Petitioners did not present any evidence either of error in the methodology or disregard of controlling evidence.

The Court is of opinion that Petitioners did not carry their burden to rebut the presumption of correctness of the tax assessments regarding the Recreation Island. Petitioners can establish manifest error by proving a sufficient disparity between assessed value of property and fair market value. *West Creek Associates, L.L.C. v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008). Manifest error can also be shown by proving that the taxing authority employed an improper methodology in arriving at a property's assessed value. *TB Venture, L.L.C. v. Arlington County*, 280 Va. 558, 701 S.E.2d 791 (2010). The parties appear to agree that there is no great disparity between the City's assessments of the Recreation Island and the fair market value presented by the Petitioners. Petitioners state that the fair market value of the Recreation Island, without additional adjustments regarding the costs of building a vehicle bridge in the amount of $850,000, is $1.5 million. The parties differ in the amount of deduction made from the base value of the property. The Petitioners did not submit any evidence proving that the City used improper methodology.

Petitioners claim that controlling evidence of market value was disregarded in making the Recreation Island assessments, but did not specifically address this issue. Petitioners failed to present evidence of the City's assessor's disregard of controlling evidence which led to the alleged excessive fair market value of the Recreation Island.

## Conclusion

According to the law, a tax assessment is deemed *prima facie* correct and Petitioners must rebut the presumption of correctness by a preponderance of the evidence. Regardless of whether the Petitioners attempted to show manifest error or total disregard of controlling evidence in making the assessment, they have the burden to establish the property's fair market value. Drawing all reasonable inferences in favor of the Petitioners, the Court concludes that the Petitioners did not present sufficient evidence to establish the fair market value of the Office Building. Petitioners' evidence of the fair market value of the property simply advanced a theory of highest and best use of the property by converting the property into speculative investor-owner multi-tenant space. The Court does not agree with such

a theory and considers this position speculative as it does not accurately reflect the present value of the property. The Court further finds the Petitioners' omission of the sales comparison analysis in the determination of fair market value is a serious failure to reliably and accurately establish the fair market value of the property.

The Court also finds that Petitioners failed to carry the burden of showing that the assessed value of the Recreation Island was higher than the fair market value. Petitioners did not prove manifest error or total disregard of controlling evidence in the City's method of determining fair market value of this portion of the property.