COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Huff
Argued at Chesapeake, Virginia

UNPUBLISHED

WILLIAM STRACK

MEMORANDUM OPINION[*] BY
v.      Record No. 0822-13-1                        JUDGE GLEN A. HUFF
DECEMBER 17, 2013

WENDY ELIZABETH STRACK

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Walter J. Ford, Judge Designate

Robert L. Harris (Barnes & Diehl, P.C., on briefs), for appellant.

Kenneth B. Murov (Hope C. Hutchinson; Law Offices of Kenneth
Murov, on brief), for appellee.

William Strack ("husband") appeals an order of the Circuit Court of the City of

Williamsburg/James City County ("trial court") denying husband's motion to reduce or

terminate spousal support. Husband contends that the trial court failed to view the evidence in

the light most favorable to husband on wife's motion to strike, erroneously weighed the

witnesses' credibility, and failed to draw the reasonable inference that husband's termination

from employment was not his fault. Additionally, husband asserts that the trial court was plainly

wrong in finding that husband's termination arose from his own fault.

For the following reasons, this Court affirms the trial court's rulings.

I. BACKGROUND

The standard of review for husband's first assignment of error, the alleged failure to view

the evidence in the light most favorable to husband as the non-moving party on the motion to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

strike, requires us to view the evidence in the light most favorable to husband, granting him the benefit of all reasonable inferences. Volpe v. City of Lexington, 281 Va. 630, 639, 708 S.E.2d 824, 828 (2011) (quoting TB Venture, LLC v. Arlington Cnty., 280 Va. 558, 562-63, 701 S.E.2d 791, 793 (2010)). As to the second assignment of error, claiming the evidence to be insufficient to support the trial court's finding that husband's termination arose from his own fault, "we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Viewed from either perspective, the controlling facts remain the same. Here, the motion to strike was granted at the conclusion of the plaintiff-husband's case-in-chief. The trial judge found the admissions by husband compelling, "all of the evidence that I needed concerning whether or not he was underemployed came from him . . . and concerning his loss of employment . . . it was strictly between Mr. Henderson and Mr. Strack." The evidence presented was as follows.

Husband married Wendy Strack ("wife") on February 22, 1997, and they were separated on March 7, 2009. Following the separation, the parties negotiated a separation agreement ("agreement") dated September 28, 2010, settling all issues. The agreement was ratified, affirmed, and incorporated by reference, but not merged into the final decree of divorce, which was entered on January 3, 2011. Thereafter, both parties agreed to a monthly spousal support amount of $4,250 per month. At the time the spousal support was agreed upon, wife was unemployed and husband was employed by Henderson, Inc. ("HI") with an annual income of $120,000 or $10,000 per month. The agreement and decree of divorce further provided "[i]n the event [husband's] present employment with Henderson, Inc. is terminated through no fault of his own . . . [husband] shall have the right to seek modification or termination of the spousal support."

During husband's case-in-chief, Peter Henderson ("Henderson"), chairman of HI, testified that husband started working for HI in 1995 and "worked himself up from being a pipefitter all the way up to the position of president of the company in 2007." Henderson attributed husband's promotion to "leadership skills that fit well within [HI] . . . and [he] just did a good job and worked his way up." At a meeting on August 31, 2012, Henderson terminated husband despite HI's growing profitability and expansion under husband's presidency.

Husband's separation notice ("notice"), which was signed by Henderson, was entered into evidence at trial. Henderson testified the notice was "accurate when completed" and husband's "Type of Separation" was a "Layoff." Moreover, the notice indicated husband's performance was "satisfactory" in all categories, including "quality," "productivity," "job knowledge," "reliability," "attendance," "independence," "creativity," "initiative," "adherence to policy," "interpersonal relationships," "judgment," and "supervisory skills." Furthermore, the notice indicated in "Remarks" under the "Type of Separation" that HI was "not comfortable with the direction that the company was headed."

On direct examination Henderson elaborated about his growing discomfort with the direction of the company:

> BY MR. HARRIS: All right. So, when you say you were not comfortable with the direction the company is headed, you've testified that the leadership style was changing, correct?
>
> [Peter Henderson:] Correct.
>
> Q: And how was the leadership style changing?
>
> A: There's leadership by motivation; there's leadership by intimidation, and it was shifting.
>
> Q: Okay. Okay. Are you saying that he was intimidating people?
>
> A: Yes.

Moreover, eighteen months before his termination, Henderson said that he began open discussions with husband about his leadership style. Furthermore, Henderson testified he spoke with husband regarding his leadership style on "most days," but nevertheless, "it was snowballing" and "getting worse." At the termination meeting on August 31, 2012, Henderson told husband "I'm not comfortable with the direction of the company; we need to do something." Husband responded by requesting the termination be "mutual" as he "was concerned about his image in the community." Husband suggested that Henderson characterize the termination as "mutual," explaining that husband desired to build a Crossfit fitness franchise in Gloucester. Although Henderson initially consented to characterizing the termination as "mutual," he later informed husband "[t]he mutual separation agreement that we agreed to isn't feeling right. I need to come front [sic] with the group and say that I was uncomfortable with the direction of the company."

Shortly after his termination, husband was offered a "proposed severance package," which included sixteen weeks of pay at $1,692.31, a portion of his COBRA and dental coverage for eight months, a company vehicle, and redemption of his stock. Husband rejected the proposed severance because it included a discount of his equity interest in HI. On January 2, 2013, husband opened his own Crossfit business in which he is employed on an hourly basis at $20 per hour or $3,466 per month.

At trial, husband testified that he and Henderson occasionally "had disagreements on ways things were handled" and "[Henderson] would make suggestions on how [husband] could have handled something more to his liking." On the other hand, husband denied Henderson ever warned him that he may be terminated if he did not heed Henderson's suggestions. Additionally, husband insisted that while he did not contest his termination, he was unhappy with the

termination and did not see it solely as an opportunity to focus on the Crossfit Gloucester franchise.

Following husband's case-in-chief, wife moved to strike the evidence. The trial court granted the motion, stating "I cannot get around the fact that he was going to be fired. And you can't say he was doing a great job, but we're going to fire you anyway. That doesn't make sense to me." A hearing on husband's motion to reconsider was held on April 4, 2013. The trial court elaborated on its previous ruling:

> But, the testimony from Mr. Henderson, as I heard it and as I found the fact to be, was that he went into the office to fire him. He wasn't going to be laid off. He was being fired. And the cause for the firing was one of two things, either he was just arbitrarily getting rid of him or whether he had some reason for it.
>
> I was trying to figure out what the reason was and the reason was that he [Henderson] did not like his [husband's] attitude towards people, the intimidations, and he had warned him about talking about those things, so he was fired for cause, something that [husband] did.
>
> So, therefore, he was fired for a cause for something he did. That makes the case proper for the Court to consider imputing the income to him.
>
> After he was talking to Mr. Henderson, then he suggested to Mr. Henderson that he make it mutual and that is, that he would relieve his position because he wanted to go into the other business anyway, I assume. Anyway, he wanted to make it mutual.
>
> And in that case under that scenario, he was leaving on his own accord. He wanted to leave. It's a mutual thing, we're leaving. So therefore, he's leaving a job where he earned a lot of money on his own accord and therefore, it's proper to impute income. That's how I saw the facts in the case.
>
> I understand what you're saying that all the documents were indicating he was laid off, but they came after he was told he was fired. That's when he said, let's make it mutual, that's when those papers were performed.

The trial court then denied husband's motion to reconsider and upheld the previous ruling. This appeal followed.

## II. ANALYSIS

On appeal, husband contends that the trial court erred in granting wife's motion to strike by failing to view the evidence in the light most favorable to the husband, erroneously weighing the witnesses' credibility, and failing to draw a reasonable inference that his termination was not his fault as shown by HI's offering husband a severance package. Additionally, husband asserts that even if the case were not in a posture of a motion to strike, the trial court was plainly wrong in finding that husband's termination arose from his own fault. Wife asserts that the evidence supports the trial court's granting of the motion to strike and supports the conclusion that husband was at fault in his termination from HI.

### A. Motion to Strike

On appeal, husband argues that the trial court erred in granting wife's motion to strike. Specifically, husband contends that the trial court failed to view the evidence in the light most favorable to husband, erroneously weighed Henderson's credibility over husband's testimony, and failed to draw reasonable inferences, namely from HI's offering husband a severance package, as evidence that the termination was not husband's fault.

"The standard that governs the trial court's review of the plaintiff's evidence before granting a motion to strike the case is well settled." Chaplain v. Chaplain, 54 Va. App. 762, 772, 682 S.E.2d 108, 113 (2009). Specifically, "'[w]hen ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence.'" Volpe, 281 Va. at 639, 708 S.E.2d at 828 (quoting TB Venture, 280 Va. at 562-63, 701 S.E.2d at 793). Moreover, "[t]he trial court is not to judge the weight and credibility of the evidence, and may not reject any

- 6 -

inference from the evidence favorable to the plaintiff unless it would defy logic and common sense." Id. Lastly, "[o]n appeal, when this Court reviews a trial court's decision to strike a plaintiff's evidence, we likewise view the evidence in the light most favorable to the plaintiff." Id.

In the case at bar, husband was terminated from his employment with HI. Under the terms of the divorce decree and settlement agreement, husband therefore was entitled to seek modification or termination of spousal support but would have the burden of establishing that the termination was "through no fault of his own." In ruling on the motion to reconsider the trial court's granting of the motion to strike, the trial court observed that the issue relating to husband's loss of employment "was strictly between Mr. Henderson and [husband]." Both testified in husband's case-in-chief.

The trial court made a finding of fact that Mr. Henderson fired husband for cause. The trial court explained that the finding was based on the testimony of the only two witnesses who were able to speak to the grounds for termination. In particular, the trial court recounted that Mr. Henderson was prepared to fire husband because of husband's "attitude towards the people, the intimidations and he had warned [husband] about . . . those things, so he was fired for cause." Moreover, Henderson testified that husband's intimidating style "was snowballing" and "getting worse" despite multiple meetings to correct his approach. Other evidence supporting the trial court's ruling included Mr. Henderson's explanation that he, as chairman of the board of directors, wanted to see HI taken in a different direction, namely a more family-oriented course, and husband's understanding that his discharge was for cause, as evidenced by husband's request that the termination be recast for the public. Husband's suggestion that the termination be characterized as "mutual" would also evidence that husband's desire to focus on other employment was a cause or fault in the termination. Accordingly, viewed in the light most

favorable to husband, the testimony of Henderson and husband supported the trial court's finding that the termination was not "through no fault of [husband]."

## B. Sufficiency of the Evidence

Additionally, husband asserts that the trial court was plainly wrong in finding husband's termination arose from his own fault. On appeal, "we will not disturb the trial court's decision where it is based on an *ore tenus* hearing, unless it is 'plainly wrong or without evidence in the record to support it.'" Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)). "In determining whether credible evidence exists, the appellate court does not reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted).

Furthermore, "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon, 40 Va. App. at 258, 578 S.E.2d at 835 (citations omitted). "'That principle requires us to discard the evidence of the [husband] which conflicts, either directly or inferentially, with the evidence presented by the [wife] at trial.'" Petry v. Petry, 41 Va. App. 782, 786, 589 S.E.2d 458, 460 (2003) (citation omitted).

In the case at bar, the trial court considered the testimony of both Henderson and husband, the notice letter, severance package, and deferred compensation plan in making its determination. In reaching its findings the trial court highlighted Henderson's intention to take the company in a different direction and continuing problems with husband's leadership. Henderson testified to husband's intimidating management approach and the daily discussions regarding his leadership that spanned eighteen months preceding husband's termination. Likewise, the trial court based its ruling on Henderson's testimony regarding how husband's

intimidating style "was snowballing" and "getting worse." Lastly, the trial court noted husband's intention to characterize the termination as a "mutual" decision so husband could pursue building his Crossfit Gloucester business. Based on these considerations, the court concluded that husband was either fired for cause due to his intimidating leadership style or left on his own accord to pursue another business venture. Under the terms of the divorce decree and under applicable law, spousal support may not be modified when husband's termination occurred due to his own fault, or is "due to his own voluntary act" or husband is "voluntarily under employed." See Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991); Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986). The finding of the trial court was supported by evidence in the record and therefore will not be disturbed on appeal. Furr, 13 Va. App. at 481, 413 S.E.2d at 73. Accordingly, this Court finds that the trial court was not plainly wrong in finding husband's termination arose from his own fault.

### III. CONCLUSION

Based on the foregoing, this Court finds that the trial court did not err in granting wife's motion to strike and was not plainly wrong in finding husband's termination arose from his own fault. Accordingly, the judgment of the trial court is affirmed.

Affirmed.