CHIEF JUSTICE LEMONS, concurring.
I concur in the judgment reached by the Court in the opinion authored by Justice McCullough. As Justice McCullough notes:
**830 Viewing the evidence in the light most favorable to the prevailing party, we conclude that there is evidence in the record to support a finding by the circuit court that Western did not prove that the Commissioner overvalued the refinery's machinery and tools in the January 1, 2010 and January 1, 2011 assessments. Because the burden of proof rested with Western, this failure of proof means that the assessment must stand.
JUSTICE McCLANAHAN, with whom JUSTICE MIMS and JUSTICE KELSEY join, dissenting.
The Commissioner exceeded her statutory authority under Code § 58.1-3503 by imposing arbitrary tax assessments upon Western's refinery machinery and tools. The statute does require that such tangible personal property be "valued by a means of a percentage or percentages of original cost." Code § 58.1-3503(A)(17). But the method for establishing the percentage must "reasonably be expected to determine actual fair market value." Code § 58.1-3503(B). This statutory requirement is dictated by Article X, Section 2 of the Constitution of Virginia : "All assessments of real estate and tangible personal property shall be at their fair market value, to be determined as prescribed by law."
In violation of these constitutional and statutory provisions, the Commissioner arbitrarily picked 25 percent as a percentage of the original cost of Western's refinery machinery and tools to establish their purported fair market value for purposes of imposing the County's personal property tax. As the Commissioner admitted on cross-examination, she did not conduct any studies or receive the assistance of any consultants in picking this percentage, and she could cite no *791 data in support of it. Rather, she simply contacted other "localities in [the] area," determined that they "use a flat percentage also," and then just came up with 25 percent "as something I [did] myself." In doing so, the Commissioner " 'committed manifest error.' " City of Richmond v. Jackson Ward Partners, L.P. , 284 Va. 8, 18, 726 S.E.2d 279, 285 (2012) (quoting TB Venture, LLC v. Arlington Cnty. , 280 Va. 558, 563, 701 S.E.2d 791, 794 (2010) ). As aptly stated on analogous facts by Judge Newman in National Helicopter Corp. of America v. City of New York , 137 F.3d 81, 92 (2nd Cir. 1998) (Newman, J., concurring in **831 part and dissenting in part), "if decision-makers picked the percentage number by throwing a dart at a display of numbers 1 to 100, use of the particular number hit would be manifestly arbitrary." That is effectively what the Commissioner did here. It was therefore worse than "employ[ing] an improper methodology in arriving at a property's assessed value," which proves manifest error. TB Venture, LLC , 280 Va. at 563, 701 S.E.2d at 794. It amounted to employing no methodology at all.
The Commissioner has set the purported fair market value of all taxable machinery and tools in the County at the same fixed percentage of 25 percent of original cost for each and every tax year indefinitely into the future regardless of their age or condition. It is no more true, however, to declare that any and all taxable machinery and tools in the County are never worth any more or any less than 25 percent of their original cost, than it is to declare that such taxable machinery and tools are never worth their original cost (i.e., 100%), or that none of them will ever be worth only a salvage value (i.e., something closer to 1%). As the majority points out, the Commissioner admittedly "concluded that over time the percentage [of 25 percent] equates to fair market value of machinery and tools." Ante at ----, 793 S.E.2d at 780 (emphasis added). This rationale for justifying the Commissioner's taxing scheme unfortunately exemplifies the familiar adage that even a broken clock is right twice a day. Yet there is no evidence to support 25 percent, as opposed to 15 percent or 35 percent or any other percentage, as the actual fair market value "over time," or at any time.
To be sure, I fully recognize that it is much easier for the Commissioner to administer the tax on machinery and tools by using one fixed percentage of original cost for calculating their tax assessed value year in and year out. Here, however, ease of administration does not equate with constitutional and statutory compliance.[1]
In rendering his decision in favor of the County in the present case, the trial court judge explained that the Commissioner "looked **832 at ... 25 percent of the original cost [of Western's machinery and tools for their assessed value], and I believe that is the way that the Virginia Code specifies it should be."[2] The trial judge thus erred as a matter of law in approving this manifestly arbitrary taxing scheme, as it could not "reasonably be expected to determine actual fair market value." Code § 58.1-3503(B). It is also evident that the trial judge relied on little else. "I think that there's no question, and I so find," the trial judge stated, "that the [C]ounty followed the statutory procedure for assessing the property." He then declared, "I also find that there was no evidence that contradicted that." This finding was plainly erroneous. It reveals that the trial judge did not properly consider any of the testimony of the three expert witnesses that testified in this case on the issue of fair market value. More specifically, none of the expert witnesses opined that the fair market value of Western's machinery and tools equaled 25 percent of their original cost in either of the two tax years in dispute.
Furthermore, the trial court, in upholding this taxing scheme, gave the County the benefit *792 of the presumption that its tax assessments were correct. See TB Venture, LLC , 280 Va. at 563, 701 S.E.2d at 794. The County was not entitled to this presumption, however, because it "committed manifest error" by implementing this unlawful taxing scheme. Id . (explaining that "[t]o rebut the presumption of correctness, 'a taxpayer must show by a clear preponderance of the evidence that the taxing authority committed manifest error' " (quoting West Creek Assocs., LLC v. County of Goochland , 276 Va. 393, 409, 665 S.E.2d 834, 843 (2008) )).
In the absence of a proper review and sufficiently supported findings by the trial court upon the critical evidence presented by both parties on the central issue of fair market value, the majority has effectively assumed the role of fact-finder in parsing the evidence and affirming the trial court's decision to uphold the County's personal property tax on Western's refinery machinery and tools. But "[a]ppellate courts are not fact-finders." Cost v. Commonwealth , 275 Va. 246, 256, 657 S.E.2d 505, 510 (2008) (Lemons, J., dissenting). "It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge **833 or jury to ensure that they are not clearly erroneous, they do not make such findings in the first instance." Columbus - America Discovery Group v. Atlantic Mut. Ins. Co. , 56 F.3d 556, 575-76 (4th Cir. 1995) (quoting Maine v. Taylor , 477 U.S. 131, 144-45, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) ). In doing so, the majority also compounds its error by giving the County the benefit of the presumption that its tax assessments were correct.[3] Ante at ---- - ----, 793 S.E.2d at 783-86.
Consequently, in light of the trial court's rulings on the record before us, I would reverse its judgment and remand this case for reconsideration, directing the trial court to conduct a full and fair review of all of the relevant evidence presented by both the County and Western concerning the fair market value of Western's refinery machinery and tools for tax years 2010 and 2011, as dictated by Article X, Section 2 of the Constitution of Virginia and Code § 58.1-3503(B). See Pullman - Standard v. Swint , 456 U.S. 273, 291, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings."). In addition, because the County's challenged taxing scheme was unlawful, I would direct the trial court to conduct its review without giving the County the benefit of a presumption that the two tax assessments at issue were correct.
For these reasons, I respectfully dissent.

Unlike York County, most of Virginia's localities determine the percentage of the original cost of machinery and tools that will be taxed by applying various sliding scales based on the age of the machinery and tools, with the percentage decreasing incrementally over time. See Stephen C. Kulp, Weldon Cooper Ctr. for Pub. Serv., Virginia Local Tax Rates (2015) § 10, at 161-77 & tbl. 10.1 (34d ed. 2016).

The trial court judge "incorporated fully" into the final order all of his findings and rulings announced orally from the bench at the conclusion of the trial.

In addition, the majority's reliance upon Norfolk & Western Railway Co. v. Commonwealth , 211 Va. 692, 694-95, 179 S.E.2d 623, 625 (1971), and City of Richmond v. Commonwealth , 188 Va. 600, 625, 50 S.E.2d 654, 666 (1948), in support of the Commissioner's arbitrary tax assessments is misplaced. In neither case was the fair market value of the subject properties established by using a static percentage of the properties' original cost, as the Commissioner did here. Indeed, in City of Richmond , the fair market value of the properties was not even in dispute. The City was instead challenging the State Corporation Commission's decision to assess the properties for local taxation by application of a percentage of their actual fair market value . City of Richmond , 188 Va. at 623-25, 50 S.E.2d at 665-66. The Commission's utilization of that percentage ("an equalizing factor of forty per cent") for its assessment therefore had nothing to do with the Commission's threshold determination of the properties' actual fair market value. Id . at 603, 50 S.E.2d at 655. Then in Norfolk & Western Railway Co. , the dispute was an accounting principles battle to determine the proper methodology for establishing the fair market value of the railroad's property being assessed for local taxation, which resulted in this Court affirming the Commission's use of the "original cost less depreciation method." 211 Va. at 700-01, 179 S.E.2d at 629. Thus, contrary to assertions by the majority, neither City of Richmond nor Norfolk & Western Railway Co. provides legal support for a purported "method" of taxation based on fair market value that would, as here, only "provide a reasonable approximation of fair market value over time ." Ante at ----, --- S.E.2d at ---- (emphasis added).