COURT OF APPEALS OF VIRGINIA

Present:     Judges Ortiz, Chaney and Senior Judge Haley
Argued by videoconference


JOHN R. FRICCHIONE

MEMORANDUM OPINION[*] BY
v.       Record No. 0690-22-2          JUDGE VERNIDA R. CHANEY
AUGUST 1, 2023
CHERYL MATTHEW


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

Paul L. Warren (Ryan V. Dougherty; Colin A. Dale; Warren PLC, on
brief), for appellant.

Desmond L. Rice (Ramika D. Stephens; Stephanie M. Dahl &
Associates, on brief), for appellee.


John R. Fricchione appeals the circuit court's order granting Cheryl Matthew's motion to

strike the plaintiff's evidence for failure to make a prima facie case of negligence.  On appeal, he

argues that the circuit court erred by granting Matthew's motion to strike because there was

evidence that Matthew "breached her duty of care to him when he fell at her property."  For the

following reasons, this Court affirms the circuit court's judgment.

BACKGROUND

"According to well-settled principles of appellate review, when the trial court grants a

motion to strike the plaintiff's evidence, we review the evidence on appeal in the light most

favorable to the plaintiff." *Collelo v. Geographic Servs., Inc*., 283 Va. 56, 67 (2012) (quoting

*Green v. Ingram*, 269 Va. 281, 284 (2005)).  Accordingly, we state the facts in the light most

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

favorable to Fricchione. Additionally, we grant Fricchione "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Egan v. Butler*, 290 Va. 62, 73 (2015) (quoting *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 281 (1989)).

On the morning of January 18, 2020, Fricchione, the owner of J&J Tile, traveled to Matthew's home for the first time for a scheduled appointment to take measurements and provide an estimate to install a backsplash in Matthew's kitchen. That morning, "it was cold out," with "freezing rain," and had "snowed . . . lightly the night before."

Upon arriving, Fricchione traveled an icy walkway leading to the front door of Matthew's home. In doing so, Fricchione climbed a brick stairway (the "stairway"), which had "scattered snow" and ice on its steps. "There [were] no broken bricks [and] no broken railing" on the stairway. After reaching the top of the stairway, Fricchione then crossed a sloped brick pathway that connected to the front steps of Matthew's home. He then entered the home, measured its kitchen walls, and provided Matthew with an estimate for the backsplash installation.

After providing the estimate, Fricchione exited the home in the same way he had entered. When he left Matthew's home, the weather conditions were icy, snowy, and rainy. As he walked toward the stairway, Fricchione did not see any coloration or any other markings along the top step identifying it as the top step. The alignment of the bricks on the top step was the same as the alignment of the bricks on the walkway leading to the stairway.

As Fricchione approached the stairway with his clipboard book in his right hand, he grabbed the stairway railing using the same hand. Fricchione then felt his "legs [come] out from underneath [him]" and fell, injuring his right shoulder and left hip.

In November 2020, Fricchione filed a personal injury complaint against Matthew in the circuit court, alleging that "Matthew was aware of the ice on her front walkway and failed to keep the front stairway to her home free and clear of freezing water and ice." Fricchione's

complaint further alleged that Matthew "knew, or in the exercise of reasonable care should have known, of the unsafe condition of the ice-covered steps on the stairway, or . . . created said condition, in her negligent maintenance of the stairway, and . . . should have corrected the condition or warned [him] of its existence." Matthew answered the complaint, and the case proceeded to a jury trial on April 7, 2022.

At trial, Fricchione testified to all the facts recited above. He further testified that when he fell, he "didn't know where [he] was" and that he "couldn't tell where the first [step] or the next one was." Rather, "before [he] could even judge it, [his] legs came out from underneath [him] and [he] went down." Fricchione testified that he "felt the ice when [his] legs came out from underneath [him]." Fricchione reported to his doctor that he "slipped on some ice."

Matthew, called as an adverse witness, testified that she woke up thirty minutes before Fricchione arrived. Matthew had yet to go outside when Fricchione arrived and was unaware that any snow, rain, or ice had accumulated during the night. Fricchione told Matthew that "it was getting slick out there."

Matthew also testified that she did not design the stairway and had hired a licensed contractor to replace the concrete steps with bricks around "fifteen, sixteen years ago." In examining the photograph of the stairway, Matthew pointed out that the bricks on each side of the pathway leading to the stairway "[were] laid differently" than the bricks forming the steps of the stairway. Matthew acknowledged that there are no markings showing where the top step and second step are.

At the close of Fricchione's case-in-chief, Matthew moved to strike the evidence. She argued that Fricchione had knowledge of the icy condition of the stairway, the danger was open and obvious, and Matthew did not breach any duty owed to Fricchione as an invitee. Matthew further argued that there was no evidence "that the way the bricks were laid was structurally

- 3 -

compromised or structurally incorrect," or that she had notice of an issue that would give rise to a duty to warn Fricchione about the design of the stairway.

In response, Fricchione contended that his case was not "a failure to clear snow and ice case" and "has not been presented that way." Rather, he argued that the way "the bricks were aligned [gave] no signal that there [was] a change in height," that their alignment was incorrect as a matter of "common sense," and that the weather "exacerbated" the danger presented by the way the bricks were aligned. Fricchione claimed that "common sense says you need to mark where the top of the steps are, because it is a lot harder to see when there's bad weather." Fricchione maintained that Matthew would have fulfilled her duty to him as an invitee if she had marked the front step, warned him regarding the absence of a signal, or instructed him to exit through the back door of her home.

After considering the arguments of the parties, the circuit court granted Matthew's motion to strike. In doing so, the court found that "there has been no evidence that the appearance of these steps is somehow a breach of a standard of care, or somehow negligently built, or improperly built." The court also noted that Fricchione testified that "there was nothing wrong with the . . . steps or railing, nothing broken." The circuit court found that the uncontradicted evidence established that "Matthew hadn't been outside, hadn't seen the conditions of the front steps on that day, but . . . [Fricchione] actually had, because he had ascended them." Additionally, based on uncontradicted testimony, the court found that Fricchione told Matthew that the steps were slippery. The circuit court concluded that when Fricchione "chose . . . to go back down those steps," "he was in a better position or, at worst, an equal position to see the condition of those steps under those [weather] conditions" as was Matthew. Applying the holding in *Tate v. Rice*, 227 Va. 341, 345 (1984), the circuit court

- 4 -

granted the motion to strike and entered an order dismissing the case with prejudice. This appeal followed.

ANALYSIS

On appeal, Fricchione argues that the circuit court erred by granting Matthew's motion to strike because he presented sufficient evidence to show that Matthew "breached her duty of care to him when he fell at her property." In order to survive a motion to strike in a premises liability case, "the plaintiff must introduce evidence of the responsible [party's] actual or constructive knowledge of a defective condition on the premises to establish a prima facie case of negligence." *AlBritton v. Commonwealth*, 299 Va. 392, 405 (2021) (quoting *Grim v. Rahe, Inc.*, 246 Va. 239, 242 (1993)). "When ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." *Volpe v. City of Lexington*, 281 Va. 630, 639 (2011) (quoting *TB Venture, LLC v. Arlington Cnty.*, 280 Va. 558, 562 (2010)). "The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense." *Id.* at 639 (quoting *TB Venture, LLC*, 280 Va. at 562-63).

On review of a trial court's judgment granting a motion to strike the plaintiff's evidence, this Court applies "the same principles that applied in the trial court, accepting as true all the evidence favorable to the plaintiff[] as the non-moving part[y] and 'any reasonable inference a jury might draw therefrom' in support of the plaintiff['s] case." *Welton v. Branch Banking & Tr. Co.*, 785 S.E.2d 217, 221 (Va. 2016) (quoting *Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 266 Va. 582, 590 n.6 (2003)). "The judgment of the trial court is to stand unless plainly wrong or without evidence to support it." *Id.* (quoting *Nationwide Mut. Ins. Co. v. St. John*, 259 Va. 71, 76 (2000)).

- 5 -

Fricchione contends that the "evidence sufficiently showed that there was a non-obvious and unsafe condition that could have caused his accident," namely the design of the stairway.[1] He argues that his testimony regarding his descent of the stairway, "particularly the difficulty identifying the first step on which he slipped and fell," and the photograph of the stairway were sufficient to establish that the design of the stairway constituted an unsafe condition. We disagree.

"It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 95 (2021) (quoting *McFadden v. Garrett*, 211 Va. 680, 683 (1971)). As the circuit court observed, the record fails to include any evidence as to what the standard of care is with respect to designing a brick stairway, let alone whether the design of the stairway or the failure to warn of the dangers it presented breached that standard of care. Indeed, there is no testimony or evidence in the record that the stairway was improperly designed at all. *See Chandler v. Graffeo*, 268 Va. 673, 681 (2004) (standard of care may not be left to speculation). To the contrary, Matthew testified without contradiction that the stairway was constructed by a licensed contractor. Accordingly, there was no evidence that would have allowed the jury to find that the design of the stairway created an unsafe condition.[2] *See Simmons v. Miller*, 261 Va. 561, 572 (2001) ("[I]f a jury necessarily has reached its conclusions

[1] Fricchione's complaint does not allege that the design of the stairway resulted in an unsafe condition. On appeal, Fricchione argues that his evidence "focused on *both* the conditions of the stairs *and* the construction of them, which together created an unsafe condition leading to [his] injury." However, all of Fricchione's arguments in support of his appeal rest upon his belief that the construction or design of the stairway constituted an "unsafe condition."

[2] Fricchione contends that in granting the motion to strike, the circuit court improperly "weigh[ed] the credibility of competing witnesses, namely Fricchione and Matthew." However, there was no evidence to support a finding that the brick stairway was designed, constructed, or maintained in breach of a standard of care.

based on speculation and conjecture, the plaintiff's case fails." (quoting *O'Brien v. Everfast, Inc.*, 254 Va. 326, 330 (1997))).

In his final argument, Fricchione contends that both the design of the stairway and weather created "an unresolved factual issue as to when or if Matthew's *duty to take remedial action from the previous night's snow* may have been triggered." (Emphasis added). To support his claim that Matthew had such a duty, Fricchione argues that this case is distinguishable from *Tate v. Rice*, which held that "the duty of the owner or occupier of a private residence to maintain his premises in a condition which is reasonably safe for an invitee does not extend to warning of, or removing, a danger that is open and obvious." 227 Va. at 348.

This Court agrees with the circuit court's ruling that this case is indistinguishable from *Tate* with respect to alleged negligence relating to the ice and snow on Matthew's stairway. However, Fricchione specifically abandoned his claim that Matthew had a duty to clear the snow or ice on the stairway or negligently failed to do so. Rather, he specifically argued to the contrary that this case was not "a failure to clear snow and ice case" and "has not been presented that way." "The Supreme Court of Virginia has 'repeatedly stated, [that] 'no litigant . . . will be permitted to approbate and reprobate—to invite error . . . and then to take advantage of the situation created by his own wrong.'" *Lundmark v. Commonwealth*, 74 Va. App. 569, 582 (2022) (quoting *Garlock Sealing Techs., LLC v. Little*, 270 Va. 381, 388 (2005)). For the foregoing reasons, we hold that the circuit court did not err in granting Matthew's motion to strike.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*