We review a trial court's decision whether to admit expert testimony under an abuse of discretion standard, only reversing if the record shows clearly that the witness was qualified. Sami v. Varn, 260 Va. 280, 284, 535 S.E.2d 172, 174 (2000) ; Landis v. Commonwealth, 218 Va. 797, 800, 241 S.E.2d 749, 750-51 (1978). Expert opinion may be admitted to assist the fact finder if such opinion satisfies certain requirements, "including the requirement of an adequate factual foundation." Forbes v. Rapp, 269 Va. 374, 381, 611 S.E.2d 592, 596 (2005) ; Va. R. Evid. 2:702 and 2:703. As we have stated, "[q]ualification of an expert witness does not insure admission of his every statement and opinion." Swiney v. Overby, 237 Va. 231, 233, 377 S.E.2d 372, 374 (1989). The admission of expert testimony is controlled by Rule 2:702, which provides in relevant part:
(a) Use of Expert Testimony.
(i) In a civil proceeding, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
* * *
(b) Form of opinion. -Expert testimony may include opinions of the witness established with a reasonable degree of probability, *220 or it may address empirical data from which such probability may be established in the mind of the finder of fact. Testimony that is speculative, or which opines on the credibility of another witness, is not admissible.
The trial court determined that Santelli did not qualify as an expert on the setting of interest rates prior to 2007. First, the trial court found there was no evidence that Santelli had any specific training in the area of setting interest rates. Second, the court found that Santelli had no experience in determining historical interest rates. All of Santelli's experience involved setting prospective rates. There is evidence to support the trial court's holding that Santelli did not have the necessary "knowledge, skill, experience, training, or education" needed in order to calculate historic interest rates, and the trial court did not abuse its discretion in refusing to qualify Santelli as an expert for the period of time prior to 2007.
From 2007 forward the trial court held that Santelli was qualified as an expert on setting interest rates. That expertise came from Santelli's experience, starting in 2007, of being a member of a committee at his bank that set interest rates. Despite qualifying Santelli as an expert for that time period, the trial court held that it could not admit Santelli's opinion because it was based upon speculation. The court held that Santelli's testimony was speculative because Santelli had relied on a single piece of data, the national savings rate, without knowing the specific correlation between that data point and the local savings rates. Further, Santelli had failed to make any inquiry into BB & T's interest rates from 2007 to the present.
Rule 2:702(B) does not permit the admission of "testimony that is speculative." Further, as we held in Hyundai Motor Co. v. Duncan, 289 Va. 147, 155, 766 S.E.2d 893, 897 (2015), "[e]xpert opinion must be premised upon assumptions that have a sufficient factual basis and take into account all relevant variables." Id. In this case, Santelli failed to take into consideration the local rates and BB & T's rates during the time period in question. Those are all relevant variables, and by not taking those variables into account, Santelli's testimony was founded on assumptions that had no basis in fact, and was therefore inadmissible. Accordingly, we hold that the trial court did not err in failing to admit this speculative testimony.
We review the trial court's decision to overrule the plea in bar de novo. Smith v. McLaughlin, 289 Va. 241, 251, 769 S.E.2d 7, 12 (2015). The parties agreed that the controlling statute of limitations in this matter is Code § 8.3A-118.1, which provides:
An action to enforce the obligations of a bank to pay all or part of the balance of a deposit account or certificate of deposit (collectively, a deposit) must be commenced within six years after the earlier of the following:
(1) If the deposit is a certificate of deposit to which subsection (e) of § 8.3A-118 applies, the date the six-year limitations period begins to run under subsection (e) of § 8.3A-118 [demand for payment]; or
(2) The later of:
(A) The due date of the deposit indicated in the bank's last written notice of renewal;
(B) The date of the last written communication from the bank recognizing the bank's obligation with respect to the deposit; or
(C) The last day of the taxable year for which the owner of the deposit or the bank last reported interest income earned on the deposit for federal or state income tax purposes.
The parties stipulated to the trial court that sections (2)(A) and (C) were not applicable. The Weltons argue that section (1) governs this case, and that the statute of limitations accrued in 2002 when James Welton presented the certificate for payment, while BB & T asserts that section (2)(B) applies, and that the issuance of the certificate itself in March 1979 was the "last written communication from the bank recognizing the bank's obligations with respect to the deposit."
We agree with the trial court's reasoning in its September 17, 2014 letter opinion that BB & T's argument with respect to section *221 (2)(B) is "strained and unreasonable" as applied to these specific facts, where the deposit converted to a savings account, and that the "written communication from the bank recognizing the bank's obligations with respect to the deposit" means something other than the actual certificate of deposit. As such, because the parties stipulated that sections 2(A) and 2(C) were not applicable and are therefore not before us on appeal, the only remaining possible accrual date in this matter was in 2002, when James Welton made a demand for payment. Accordingly, we will affirm the trial court's decision to overrule BB & T's plea in bar.
Finally, with regard to BB & T's motion to strike, we review the trial court's judgment using the same principles that applied in the trial court, accepting as true all the evidence favorable to the plaintiffs as the non-moving parties and "any reasonable inference a jury might draw therefrom" in support of the plaintiffs' case. Upper Occoquan Sewage Auth. v. Blake Constr. Co., 266 Va. 582, 590 n. 6, 587 S.E.2d 721, 725 n. 6 (2003). The judgment of the trial court is to stand unless plainly wrong or without evidence to support it. Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651 (2000). The Weltons presented evidence that James Welton discovered the certificate in his safe, and that he had told his family members he always thought he had lost track of one of his investments. BB & T had no record of the account or of any lost passbook affidavit, and presented evidence that any records of a lost passbook affidavit would have been destroyed after seven years. However, such a records retention policy does not constitute evidence of payment. See Wool v. NationsBank, N.A., 248 Va. 384, 387, 448 S.E.2d 613, 615 (1994). A reasonable jury could find that, based upon the Weltons' production of the actual certificate and the testimony that James Welton had always believed he lost track of one of his investments, along with the lack of any bank records establishing payment, the account had not been paid. Accordingly, the trial court did not err in denying BB & T's motion to strike.
For the aforementioned reasons, the judgment of the trial court is affirmed. The appellants shall pay to the appellee two hundred and fifty dollars damages.
This order shall be certified to the said circuit court.